[S. F. No. 6789.   Department One.—March 13, 1916.]

## JOHN ANDREW GIBSON, Respondent, v. KENNEDY EXTENSION GOLD MINING COMPANY (a Corporation), Appellant.

NEGLIGENCE — INJURY TO MINER BEING HOISTED IN SHAFT OF MINE — EXCESSIVE SPEED.—In an action to recover damages for personal injuries to a miner while ascending the shaft of a mine, resulting from his jumping from the bucket in which he was being carried, upon its leaving the skids, in order to avoid a threatened collision, it is held that the evidence supports the finding that the cause of the bucket leaving the skids was the too great speed at which it was being hoisted, and not the striking against the timbers of the shaft of   tamping-stick, which the plaintiff was unlawfully carrying without lashing the same to the cable.

ID.—CODE OF MINE-BELL SIGNALS—CONSTRUCTION OF STATUTE—ADDITIONAL SIGNALS MAY BE USED.—The statute (Stats. 1893, p. 82), establishing a code of mine-bell signals, does not prohibit the use of additional signals to indicate that men are to be hoisted or lowered, and if in fact such additional signals were used, the engineer in charge of the hoisting was bound, in the exercise of due care, to act upon them when they were actually given him.

ID. — EVIDENCE — EXCESSIVE SPEED IN HOISTING MAN — JUMPING TO ESCAPE SEEMINGLY IMMINENT PERIL.—The evidence warranted the jury in finding that the engineer negligently hoisted the bucket at full speed, notwithstanding the giving of signals indicating that a man was to be hoisted; that the excessive speed, together with the resultant act of the plaintiff in seeking to reach the bell cord, caused the bucket to leave the skids, and that the plaintiff received his injuries by reason of his jumping from the bucket in order to escape the seemingly imminent danger of being crushed against a platform above.

ID. — ABOLISHMENT OF "FELLOW-SERVANT" RULE — INJURED EMPLOYEE SUPERIOR TO CULPABLE EMPLOYEE.—Under the act of 1911, commonly called the Roseberry Act, which abolished the defense of an employer that the injury sued for was caused by the negligence of a fellow-servant, an employer is responsible to an employee injured by the neglect of a fellow-servant, notwithstanding the injured employee had the right of control or direction of the services of the culpable employee.

ID.—CONSTRUCTION OF SECTION 1970 OF CIVIL CODE.—The amendment of 1907 to section 1970 of the Civil Code, taking from the employer the benefit of the fellow-servant defense where the negligence was that of an employee having the right to direct and control the in-

jured employee, has no application to the case of an employee of superior rank, who is injured by the neglect of one of inferior rank.

ID.—INSTRUCTIONS—POINTS COVERED BY INSTRUCTIONS GIVEN.—The refusal to give requested instructions is not error, if the points embodied therein are sufficiently covered by other instructions given.

ID. — ASSUMPTION OF ESTABLISHMENT OF CONTROVERTED FACT. — An instruction which assumes the establishment by the evidence of a controverted fact as to which the evidence is conflicting is properly refused.

ID.—EVIDENCE OF TIMES BUCKET WAS SAFELY HOISTED.—In such action, the refusal to allow evidence showing the number of times that the bucket had been raised and lowered over the skidway without accident after the injury to plaintiff, is without prejudice, where the engineer himself testified that he had lifted and lowered the bucket over the skids over one hundred thousand times.

ID. — DIRECT TESTIMONY AS TO CONTROVERTED FACT — FAILURE TO CALL OTHER AVAILABLE WITNESS.—Where the issue was raised in such action whether the proper signal had been given indicating that a man was about to be hoisted, and the plaintiff, who was present at the giving of the signal, testifies directly in the affirmative of such proposition, no inference can be drawn against him arising from his failure to call as a witness another person who was also present; and where the defendant calls such person as a witness, his evidence, tending to show that he might have been produced as a witness for the plaintiff, is properly excluded.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. B. V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

L. A. Redman, for Appellant.

Alfred Sutro, and Pillsbury, Madison & Sutro, for Respondent.

SLOSS, J.—The plaintiff, employed by the defendant in the operation of its mine near Jackson, Amador County, was seriously injured while ascending the shaft of the mine. He brought this action to recover damages for his injuries, and obtained a verdict and judgment in the sum of twenty thousand dollars. The defendant appeals from the judgment.

The shaft had an inclination of 66 degrees from the surface to about 855 feet down, and an inclination of 74 degrees

below that point. There were various levels, including one at eight hundred feet and one at 950 feet from the surface. Ore was brought up by means of two iron buckets, one or the other of which was attached to a cable running from an engine at the surface into and down the shaft. The ore-buckets were three feet in depth and 26 inches in diameter. They were used for hoisting and lowering men, materials, and tools as well as in bringing rock to the surface. By reason of the inclination of the shaft, the buckets did not swing clear but rested in their course on the lower or foot wall. They were guided and held in line by parallel skids, made of 4x6 timbers, set on edge and attached to the timbering of the shaft. On opposite sides of the buckets were iron lugs used in dumping the buckets, and serving the further purpose of controlling the rolling of the buckets on the skids.

The movement of the cable and buckets was controlled by an engineer operating the engine at the surface. Signals indicating the desired movements were given by means of a bell, which was rung by pulling a bell cord running from the top to the bottom of the shaft.

At the time of the accident which caused plaintiff's injuries, an empty ore-bucket had been lowered to the 950 foot level. The other ore-bucket was at that point and had just been filled with broken rock or muck which was to be hoisted to the surface. The plaintiff was at the 950 foot level and desired to ascend to the eight hundred foot level. A mucker working on the 950 foot level detached the cable from the empty bucket and attached it to the full one. The plaintiff mounted this bucket for the purpose of ascending to the eight hundred foot level. Certain signals were given. Just what bells were rung, and what was the meaning of the signals claimed by the respective parties to have been given, are points around which much of the controversy in the case was waged. The claim of the plaintiff, as set forth in his complaint, was that the defendant (acting, of course, through its engineer) hoisted the bucket at a great and unusual and highly dangerous speed; that the plaintiff, noticing this, leaned over in an endeavor to pull the bell cord so as to signal a stop; that while plaintiff was so engaged, the bucket left the skids and was being hauled up between the right-hand skid and the side wall of the shaft; that over the part of the shaft in which the bucket was then traveling there was a plat-

form against which plaintiff, as he thought, would probably be crushed, and that, in the effort to save himself from this threatening danger, he jumped from the bucket. In thus jumping he received the injuries complained of.

It appeared that the engine, when run at full speed, would raise a loaded bucket at a rate of not over 450 feet per minute. The speed at which it was run with a man or men aboard was about one-half of this. The plaintiff claimed that the bucket had been hoisted at full speed, when it should, under the signal given, have been hoisted at one-half speed. The defendant's contention, on the other hand, was, first, that there was no excessive speed in that full speed would not have caused the bucket to leave the skids, and second, that, in any event, it was not negligent on the part of the defendant to run the bucket at full speed, because, as it claimed, no signal indicating that a man was to ride on the bucket had been given. Beyond all this, the defendant claimed and attempted to show by affirmative proof that the true cause of the accident was that the plaintiff had, in violation of the rules of the mine and of a statute governing the operation of mines (Stats. 1893, p. 82), taken with him on the bucket a tamping-stick, consisting of a piece of iron pipe between five and six feet in length, without lashing the same to the cable. The plaintiff had, as it was claimed, carelessly allowed the tamping-stick to strike one of the timbers of the shaft and this, so the defendant insisted, was the true and only cause of the bucket leaving the skids.

The trial was protracted, and the points to which we have referred were elaborately developed by the testimony. The appellant urges with great force and earnestness that the evidence established conclusively that the striking of the tamping-stick against the timbers, rather than the speed of the ascent, was the true cause of the accident. It may fairly be said that the showing made in this behalf is one that throws no small doubt on the correctness of the conclusion reached by the jury. We cannot, however, say that such conclusion was without substantial support in the evidence. The plaintiff's own testimony was clear and direct to the effect that he was holding the tamping-stick and the cable in the same hand, and that the stick was still in his hand, free and clear of any contact with the timbers, when the bucket left the skids and up to the moment when he jumped. The version given by

him was not inherently improbable, and this court would not
be justified in determining that the jury was not authorized
to accept it. True, the condition, after the accident, of the
stick and the timbers in the shaft, as testified to by defend-
ant's witnesses, tended strongly to support the defendant's
theory. But these indications were open to other interpreta-
tions, which might reasonably have been accepted. Taken
altogether, the evidence was such as to fairly support a find-
ing that the speed at which the bucket was hoisted did, and
that the carrying of the tamping-stick did not, cause the
bucket to leave the skids.

On the question of the sufficiency of the evidence, the case
really resolves itself into the inquiry whether a signal for slow
speed was actually given to and negligently disregarded by
the engineer. The statute above referred to requires all per-
sons or corporations operating any mine within the state of
California to adopt, use, and put in force a prescribed system
or code of mine-bell signals. Under this code, one bell is
the signal to hoist if the bucket or car is stationary, or to stop
if it is in motion. Two bells furnish the signal to lower.
Three bells means "man. to be hoisted; run slow." In the
defendant's mine, the eight hundred foot level was indicated
by the signal two bells, followed after a slight pause by two
bells. (2–2.) Under this code, as elaborated by the rules
contained in section 2 of the act, the proper signal for hoist-
ing at slow speed from the 950 to the eight hundred foot level
would have been 2–2 (the signal designating the eight hundred
foot level), followed by 3 (indicating man on board), followed
by 1 (the signal for hoisting). Concededly these signals were
not given on the occasion in question. The plaintiff's testi-
mony was that the signals given were three bells, then 2–2,
and then 1 (3–2–2–1.) He declared that the mucker, who was
on the 950 foot level with him, first rang the three bells, that
he himself then rang the 2–2, indicating the eight hundred
foot.level, after which he got on the bucket, whereupon, pursu-
ant to his direction, the mucker rang the final bell as the sig-
nal to hoist. The mucker, Angeló Bianchinotti, a witness
called by the defendant, did not support the plaintiff with
reference to the ringing of the three bells. His testimony was
that Gibson had given the 2–2 signal before mounting the
bucket, and that he, Angelo, had then rung the one bell. The
engineer's version differed from that of both Gibson and

Angelo. But, whatever may have been his testimony, the jury was certainly justified in finding the facts to be as testified to by Gibson or by Angelo. In other words, the evidence would have justified a finding that the signal given was 3–2–2–1, or a finding that it was 2–2–1. The plaintiff claims, and we think the evidence sustains the claim, that under the system in force at the defendant's mine, one, at least, of these signals would serve to indicate that the bucket was to be hoisted at slow speed to the eight hundred foot level. It is true that these were not the signals defined by the statute, but if, notwithstanding, they were the signals commonly used in this mine for this purpose, and did convey to the engineer knowledge that a man was on the bucket, he was not justified in ignoring the fact thus brought to his attention, and hoisting the bucket at a speed in excess of that to be used when men were carried. It is not necessary at this point to go into the question, much disputed by counsel, whether the statutory system was in fact in force in this mine. Assuming that it was, the statute certainly does not prohibit the use of additional signals to indicate that men are to be hoisted or lowered. If in fact such signals were used, the engineer was bound, in the exercise of due care, to act upon them when they were actually given him. If, for example, in lowering from the surface, the engineer had actually seen that a man was on the bucket, it would hardly be claimed that he would be justified in lowering at the speed of two thousand feet per minute—the speed at which empty buckets were sent down—merely because he had not been given the statutory signal of three bells to indicate slow speed. And likewise, if by any other means outside of the statutory signals, he was advised that a man was about to ride up on the bucket, it was his duty to act upon this information.

We need not stop to inquire whether the evidence supports the view that, in this mine, the signal 3–2–2–1 would indicate that a man was to be hoisted to the eight hundred foot level. However this may be, there was evidence which warranted the conclusion that the signal 2–2–1 (without 3) was commonly used to indicate that a man desired to be hoisted to the eight hundred foot level from some lower point in the shaft. Mazoni, a miner, one of defendant's witnesses, testified directly to this effect. When asked the meaning of one bell, following two and two, he answered that it meant

"somebody on the bucket." Immediately after this answer he said that it meant "start the bucket." It was sought to clear up this confusion by further questions, and in response to a rather searching examination by both counsel and the court, the witness stated clearly that the signal given when men desired to go from the 950 to the eight hundred foot level was two and two and one; that the only hoisting done between these levels was the hoisting of men; that 2–2–1 was the recognized and regular signal for going from the 950 to the eight hundred foot level, and that a signal to go from the 950 to the eight hundred foot level (i. e., 2–2–1) meant "that there was a man on the bucket." After all this he testified, in response to a question of defendant's counsel, that if it were desired to send up something, not accompanied by a man, from the 950 to the eight hundred foot level, the signal given would be 2–2–1, but later again, when asked how fast the bucket would go from the 950 to the eight hundred foot level if 2–2–1 were rung, his answer was "man on, not go very fast." The plaintiff himself testified that in going from the 950 to the eight hundred foot level the only signal ever given was 2–2–1. Angelo, the mucker, testified that the signal 2–2–1 was used by him when he went from the 950 to the eight hundred foot level.

The defendant contends strenuously that 2–2–1 merely indicated that the bucket was to be hoisted to the eight hundred foot level and stopped there; that it did not indicate that a man was aboard, but left the engineer free to hoist at full speed. It is argued that the evidence to which we have referred shows merely that the men often took the chance of riding on a bucket at full speed. This is perhaps a permissible interpretation of the evidence, but it is by no means the necessary one. The testimony of the plaintiff, of Mazoni, and of Angelo (two of whom were defendant's witnesses) certainly warranted the jury in believing that the usual and ordinary course when buckets were hoisted from the 950 to the eight hundred foot level and stopped there, was to have a man on board; that this was generally understood in the mine and that the engineer on receiving the signal 2–2–1 was therefore advised that a man intended to ride. The same signal would no doubt have been proper for sending up a bucket between these two levels without any man, but there is no evidence that there was ever any occasion to send up

a bucket in this way, and the direct testimony is to the contrary. It is argued that under plaintiff's claim in this regard there would be no signal whatever for sending up a bucket to the eight hundred foot level at full speed. This may be true, but the fact does not overcome the explicit testimony regarding the practice in this mine. It may be that the jury believed that there was no full-speed signal between the 950 and the eight hundred foot levels because there was no occasion to use such a signal.

The conduct of the plaintiff and the engineer just after the accident lends some support to the contention that the signal 2–2–1 meant "hoist slowly to the eight hundred foot level." According to the engineer's testimony, Gibson made it manifest, as soon as he came out of the shaft, that he held the engineer responsible for his mishap. At this time, Gibson was unable to speak. He plainly showed his resentment toward the engineer, and indicated with his fingers that he had given the signal 2–2–1. The engineer disputed this, claiming that a different signal had been given. The significance of these actions, taking place as they did on the very heels of the occurrence, is apparent. Unless Gibson and the engineer both understood that the signal 2–2–1 indicated that a man was to be hoisted and called for slow speed, why should Gibson, in taking the engineer to task, have asserted that he had given this signal and why should the engineer have disputed it?

Considering all these circumstances, we are forced to the conclusion that the evidence warranted the jury in finding that the engineer negligently hoisted the bucket at full speed, notwithstanding the giving of signals indicating that a man was to be hoisted; that the excessive speed, together with the resultant act of the plaintiff in seeking to reach the bell cord, caused the bucket to leave the skids, and that the plaintiff received the injuries complained of by reason of his jumping from the bucket in order to escape the seemingly imminent danger of being crushed against the platform above. If this be true, the appellant's claim that the verdict is against the evidence cannot be sustained. For like reasons the contention that the court should have granted a nonsuit is not entitled to favorable consideration. Whether we should have reached the same conclusion that the jury did is beside the question. The weight of the evidence is to be determined

by the jury, and if their verdict has the support of substantial evidence, this court has reached the end of its inquiry.

Complaint is made of various instructions given, and of the refusal to give others.

The defendant requested an instruction that while under the law an employer is responsible to an employee injured by the neglect of a "fellow-servant," he is not responsible to an employee injured through the neglect of another employee if the injured employee had the right of control or direction of the services of the culpable employee. There was evidence that Gibson, who was foreman at the mine, had such control over the engineer. The court refused the instruction, charging that negligence of a fellow-servant was no defense. The requested instruction was properly refused. At the time of the accident to Gibson, the statute of 1911, commonly known as the "Roseberry Act," was in force. That statute provided in terms that in actions by employees against employers to recover damages for injuries sustained in the course of the employment, it should not be a defense that the injury was caused by the negligence of a fellow-servant. The instruction given by the court simply follows this statutory rule. The appellant's argument, if we understand it, is that the Roseberry Act, in using the term "fellow-servant," referred to those persons only who occupied the status of fellow-servants at the time the act was passed. At that time, section 1970 of the Civil Code, as amended in 1907, took from the employer the benefit of the fellow-servant defense, where the negligence was that of an employee having the right to direct and control the injured employee. The contention is that employees occupying this position of superior and inferior were not fellow-servants, and hence not covered by the Roseberry Act. We do not see how this construction of the statutes, assuming its soundness, can help the appellant. If Gibson and the engineer were fellow-servants when the Roseberry Act was passed, this relation ceased, under that act, to be of advantage to the employer in an action against him. If they were not fellow-servants because they had already, by the amendment of section 1970, been taken out of that category, the employer was, by that section, deprived of any defense under the fellow-servant rule. The general rule of law has been and is that an employer is liable for the torts committed by his employees in the course of their employ-

ment. (*Respondeat superior.*) Before the enactment of either of the statutes above mentioned, there was an exemption from liability where the party injured was an employee, and the injury had been caused by the neglect of another employee. This doctrine, known as the fellow-servant rule, was an exception to the general rule of liability for the torts of employees. The amendment to section 1970 of the Civil Code limited the scope of this exception. The Roseberry Act limited it still further, or destroyed it altogether. Unless the party injured and the person guilty of the negligent act were fellow-servants, their relation would not, at any stage of our legal history, have affected the defendant's liability as employer of the negligent person. But appellant's whole argument rests on the assumption that Gibson and the engineer were not fellow-servants. We are totally unable to comprehend how the enactment of statutes limiting a defense can create a new ground of defense.

We may say, in passing, that we do not subscribe to the appellant's contention that the amendment of section 1970 had any application to the case of an employee of superior rank, who was injured by the alleged neglect of one of inferior rank.

The court refused to instruct the jury that if it could not satisfactorily determine from the evidence what caused the bucket to leave the skidway its verdict should be in favor of the defendant. The defendant also requested, and the court refused, to charge that the defendant was entitled to a verdict if the bucket was caused to leave the skidway by the tamping-stick coming in contact with the timber. These instructions were unobjectionable, but we think the points which they embodied were sufficiently covered by instructions given. The court told the jury that it should find for the plaintiff if his injuries were proximately caused by the negligent hoisting of the bucket at a great and unusual and dangerous rate of speed, and that the failure to lash the tamping-stick to the cable did not contribute as a cause to any injury sustained by the plaintiff. There were further instructions properly defining the burden of proof resting upon the plaintiff, and declaring that if the jury should find that the bucket did not leave the skids "because of the speed at which it was traveling and the inclination of plaintiff's body," the verdict should be against the plaintiff.

The court refused to instruct that if the signal three bells was not given, the verdict should be against the plaintiff. As we have already pointed out, there was evidence from which the jury had the right to conclude that the signal 2–2–1 indicated slow speed. The requested instruction was therefore rightly refused. It assumed that three bells was the only signal for slow speed, whereas the jury was authorized to find the fact to be contrary to this assumption.

The point is made that the instruction authorizing a verdict for the plaintiff if the proximate cause of the injury was the negligent hoisting of the bucket at a great and unusual and dangerous rate of speed should not have been given, because there was no evidence to support the claim that the cause of the accident was such speed. This point is sufficiently answered by what we have said in our discussion of the sufficiency of the evidence. The defendant also requested various instructions based upon the theory that the proper and only signals were those defined by the statute of 1893, and that the plaintiff could not recover unless the statutory signals had been given. We have already stated our reasons for believing this to be an erroneous view. The assumption that the statutory signals only were in force is contrary to evidence which the jury had a right to accept.

The defendant requested an instruction that "by the law of this state and by the rules in force at the mine at the time of the accident it was the duty of Gibson the plaintiff to securely lash to the cable . . . the upper end of the tamping-stick . . . and if you find from the evidence that he failed to so lash it and that such failure on his part directly contributed to the accident, then I charge you that your verdict should be against plaintiff and in favor of the defendant mining company." This instruction was refused. As we have already stated, the court did, however, instruct the jury that the plaintiff could recover only if the great and dangerous speed of the bucket was the proximate cause of the injury, and the failure to lash the stick to the cable did not contribute as a cause to any injury sustained by him. We think this instruction afforded to the defendant every protection which it had the right to ask. The requested instruction recognized that the carrying of the tamping-stick would not affect plaintiff's right of recovery unless it contributed causally to the accident. The instruction given told the

jury, in effect, that if it did so contribute the plaintiff could not recover.

The appellant assigns as error certain rulings in the admission and rejection of evidence. The court refused to allow evidence showing the number of times that the bucket had been raised and lowered over the skidway without accident after the injury to plaintiff. Without passing upon the propriety of this evidence, we think it sufficient to say that the engineer himself testified that he had lifted and lowered the bucket over the skids over one hundred thousand times. His testimony was not limited to the period prior to the accident, but even if it had been, the showing made was sufficient to give to defendant every substantial benefit which it could have had from a more elaborate showing on this point. The ruling was not sufficiently important to be regarded as prejudicial.

The appellant complains of the action of the court in sustaining objections to questions asked by it of the witness Bianchinotti regarding his whereabouts after the accident and prior to the trial. The purpose of these questions was to show that the plaintiff could have found Bianchinotti and produced him as a witness. The failure to do so might, it is claimed, have been viewed by the jury as a circumstance against plaintiff under the rule of subdivision 7 of section 2061 of the Code of Civil Procedure. But this is not a case of producing weaker evidence where stronger is within the power of the party. The disqualification of parties as witnesses has been removed by our law, and the plaintiff, in testifying to the signals given, was giving evidence which was not in a legal sense "weaker" than that of any other eye-witness. (*People* v. *Dole,* 122 Cal. 486, [55 Pac. 581].) Furthermore, it was no more within the power of the plaintiff than of the defendant to produce the testimony of Bianchinotti. No inference was to be drawn against either party because the other called the witness. The other objections to rulings on the evidence do not require particular notice. None of them, we think, can be regarded as working an injury which would justify a reversal.

On the whole case, we are satisfied that the evidence was sufficient to support the verdict, and that no substantial error affecting the appellant's rights was committed by the court. The verdict is for a large amount, but it is not

claimed that it exceeds the sum which a jury might properly find to be due compensation to the plaintiff for the injuries received by him.

The judgment is affirmed. .

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.