[Civ. No. 9322. Second Appellate District, Division One.—August 30, 1934.]

In the Matter of the Estate of JOHN ERICKSON, Deceased. FRITHIOF ALBIN JANSSON et al., Respondents, v. JENNY H. MONTEN, as Executrix, etc., Appellant.

Julius C. Kayser, Leonard B. Slosson and Charles C. Montgomery for Appellant.

Roscoe R. Hess and Oscar W. Houge for Respondents.

CONREY, P. J.—John Erickson, bachelor, aged 72 years, a resident of Los Angeles County, died on the thirty-first day of August, 1930, leaving an estate in said county. He left a will which had been executed on August 2d, 1930. This will was duly admitted to probate on September 16, 1930, and Jenny H. Monten, who was named in the will as executrix, became the duly appointed and qualified executrix thereof. In March, 1931, two heirs at law for whom no provision had been made in the will, filed a petition to set aside and revoke the probate of the will. The contest was tried by a jury, to which certain special issues were submitted. The findings of the jury on these issues are set forth in the bill of exceptions as follows:

" 'Was any part of the will of John Erickson, deceased, the result of undue influence used upon him by the defendant, William A. Monten?

" 'Answer: Yes.

" 'If your answer to the above question is in the affirmative, state what part or parts of said will was or were the result of undue influence used upon said John Erickson by said William A. Monten. (Indicate the part or parts by paragraph number of the will, a copy of which is annexed hereto.)

" 'Answer: #2 #8 #9 #10,'

and said Special Verdict having attached thereto a copy of said will, from which it appears therefrom that the said paragraphs #2, #8, #9 and #10, read as follows respectively:

"#2. 'I appoint Jenny H. Monten, or if she cannot act, William A. Monten, the executor of my will, without bonds.'

"#8. 'To my nephews and nieces in Sweden, being August Anderson and his brothers and sister, or brother and sisters, as the case may be (I do not know them well, but still desire to give them something) the sum of $4,000.00 in equal shares, to those who shall live at my death. If there be less than four, each shall receive $1,000.00.'

"#9. 'To any one who shall directly or indirectly contest or assist in contesting my will, I give nothing whatsoever'. and

"#10. 'All the residue and remainder of my estate I give to Jenny H. Monten, if she live at my death, and if not, to William A. Monten, otherwise to their children in equal shares. They have always been kind to me.' "

From the foregoing findings of the special verdict, the court drew its conclusions of law that contestants were entitled to judgment revoking the probate of the will with respect to the said paragraphs of the will numbered 2, 8, 9 and 10. Accordingly, judgment was entered and it is from this judgment that Mrs. Monten, as executrix, and also individually, appeals.

The grounds of appeal, as stated by appellant, are substantially as follows: That there was no evidence of undue influence as to the four clauses which the special verdict found were the result of undue influence on the part of William A. Monten; that the special verdict is based upon evidence of a prejudicial character erroneously admitted; that the special verdict is based upon erroneous instructions;

that the special verdict is inconsistent with itself and with the pleadings, which in turn are not supported by the evidence.

In addition to the four paragraphs which were found to have been procured by means of undue influence used upon decedent ''by the defendant William A. Monten'', the will contained provisions for two small legacies to friends of the testator; also a gift of his residence and household goods to Rose Marie Gamradt, and (paragraph five,) ''to my long time friends, William A. Monten and Jenny H. Monten, I give each five hundred ($500.00) dollars''.

The grounds of contest as stated in the petition to set aside and revoke the probate of the will were:

I. That the will was not executed by the decedent.

II. That the will was not executed in the manner required by law.

III. That the decedent, at the time of execution of the will, was not of sound mind, and was incompetent to make a will.

IV. ''That William A. Monten and Jenny H. Monten are husband and wife, and both of them are attorneys at law duly licensed to practice law in all of the courts of the State of California. That about three days prior to the execution of said purported Will, the said Montens without any solicitation or request therefor on the part of the said deceased, visited the said deceased at his home, and ascertained from the said Rose Marie Gamradt that the deceased had never made a Will, and the said Montens thereupon conceived the plan of influencing the said deceased to make a Will contrary to his wishes and by which the said Montens and the said Rose Marie Gamradt would obtain the larger part of the Estate of said deceased at the time of his death. That in furtherance of said plan the said William A. Monten prepared an instrument for the deceased to sign, without any or specific directions therefor from the said deceased. That the said deceased placed trust and confidence in the said William A. Monten and Jenny H. Monten as legal advisers, and that the said William A. Monten and Jenny H. Monten abused the trust and confidence placed in them by the said deceased, and took advantage of the weakened mental and helpless physical condition of the said deceased, and dominated and controlled the said

deceased, and subjected the said deceased to their wishes, and induced, persuaded, cajoled and forced the said deceased to sign the instrument above referred to, which is the instrument heretofore admitted to probate herein, and that said deceased did not execute said instrument voluntarily or of his own volition, and is a different instrument from one which the deceased would have signed had not the said William A. Monten overpowered and subjugated the mind and will of the deceased as aforesaid.''

V. That the execution of the will was obtained by means of certain stated misrepresentations made by William A. Monten to decedent concerning the contents and effect of the will as written.

At the conclusion of the presentation of the evidence for contestants, the court granted a motion for nonsuit on the first, second, third and fifth grounds of contest, on the ground of failure to support any of them by sufficient evidence. As to the first three, this was done by express consent of counsel for contestants, who also admitted that as to the fifth ''We have introduced no evidence.''

After the introduction of evidence by the defendants, they moved for nonsuit on the fourth cause of action, which motion was denied. Thereupon the case was submitted to the jury, resulting in the verdict which has been quoted in the preceding part of this opinion.

From the statement thus far made we must assume that the will was duly executed by a testator of sufficient testamentary capacity. The will was drawn by Mr. Monten, who undertook that duty as an attorney at law, acting as such attorney for the testator. The will contained two five hundred dollar legacies, one of them to the attorney, and the other to the attorney's wife—they being his ''long time friends''. That they were old friends, and particularly that friendly relations between decedent and Mrs. Monten and her father had existed for many years, are established facts. By necessary implications of the special verdict, the jury found that as to these legacies the charge that they were obtained by means of undue influence was not sustained by the evidence. And yet, by a singular inconsistency, the jury found, upon substantially the same evidence, that those portions of the will which made Mrs. Monten the residuary legatee and appointed her to be execu-

trix of the will, were the result of undue influence used upon the testator by the said William A. Monten. In this connection it should be remembered that there is no evidence that Mrs. Monten or any of the parties in Sweden had any part in obtaining the legacies to them.

The property covered by the testamentary gift to Mrs. Gamradt had an appraised value of $3,150. Two small legacies amount to $300. The paragraph containing the gift of $4,000 to three nephews and a niece in Sweden, was by the verdict found to have been obtained by the undue influence of Mr. Monten. The entire estate was appraised at $18,003.66. The value of the residuary bequest to Mrs. Monten (*before* deduction of the expenses of burial of decedent and the expenses of administration, and the various taxes, and assuming that there were no other debts), would be about $9,500.

Where there is evidence that the testator was old and feeble, and suffering from disease; and the will was drawn by the testator's attorney at law, and the attorney is named in the will as one of the residuary legatees; these are circumstances which will raise the implication or presumption that the will was procured by the undue influence of the attorney, or will, at least, require the proponents to show what did actually occur at the time of its execution and prior thereto, so that the presence or absence of undue influence by him may be determined. (*Estate of Morey*, 147 Cal. 495, 508 [82 Pac. 57].) Numerous decisions are in the books, to like effect.

We will agree, then, that William A. Monten, who drew the will of John Erickson, was in a relation of trust and confidence which subjects him to the rule stated in *Estate of Morey, supra*. It is contended, however, by appellant Jenny H. Monten that she is not, and that the Swedish legatees are not, subject to the presumption of undue influence exercised by William A. Monten, and that such presumption is not imputable to her or to them. To support the proposition that this presumption is not imputable to other legatees without proof of a common plan, appellant cites two decisions: *In re Connor's Will*, 230 App. Div. 163 [244 N. Y. Supp. 221], and *Coghill* v. *Kennedy*, 119 Ala., at page 641, and 24 So. Rep. 459, 469. While these decisions do to some extent lean in the direction

indicated, we find other decisions which, to our way of thinking, show convincingly that the opposite rule should prevail. (*Cheney* v. *Goldy*, 225 Ill. 394 [80 N. E. 289, 116 Am. St. Rep. 145]; *Carroll* v. *House*, 48 N. J. Eq. 269 [22 Atl. 191, 27 Am. St. Rep. 469].) These decisions rest upon the reason that the undue influence overrides and destroys the true volition of the testator, so that the will is not really made by him. It is for this reason, and not merely to punish a wrongdoer, that a will obtained by means of undue influence is declared to be void. ▊ But, although the evidence was sufficient to raise the technical implication or presumption that certain of the provisions of the will were procured by undue influence of Mr. Monten, so that, as held in the *Estate of Morey, supra*, the proponents were required ''to show what did actually occur at the time of its execution and prior thereto, so that the presence or absence of undue influence by him could be determined'', there remains a further question concerning the burden of proof and the extent to which, under these circumstances, that burden must be carried by the proponents. The court's instruction No. 10 reads as follows:

''It is the general rule of law that in order to set aside a will for undue influence, there must be substantial proof by the contestants of a pressure which overpowered the volition of the testator at the very time the will was made.

''I instruct you, however, that there is an exception to this rule to the effect that where one who unduly profits by the will as a beneficiary thereunder, sustains a confidential relation to the testator, and has actually participated in procuring the execution of the will, the burden is shifted upon these seeking to support the will *to establish by a preponderance of the evidence* that there was no undue influence exercised in the execution of the will.''

The court in its instruction No. 26 further instructed the jury as follows:

''The law does not prohibit an attorney from drawing a will in which he is named as a beneficiary, but declares that any benefits provided in such will for such attorney shall be presumed to have been the result of undue influence unless the attorney can satisfy the jury *by a preponderance of all the evidence* that no undue influence was used upon the testator. In other words, in the absence of any testi-

mony, the presumption of undue influence would prevail and that part of the will which provides benefit for the attorney who drew it and for any other person who through such undue influence, if any, is a beneficiary thereunder, would have to be denied probate. The attorney must, however, overcome the presumption of undue influence *by a preponderance of the evidence* that no undue influence was used upon the testator to make the provision in the will for the attorney who prepared it, or for any other person named as beneficiary therein.''

We are satisfied that the court erred in the giving of these instructions and thereby throwing upon the proponents of the will the burden of proving by a preponderance of the evidence that there was no undue influence exercised in the execution of the will, and that there was no undue influence exercised with respect to the provisions of the will referred to in the instruction No. 26. ■ In *Scott* v. *Wood*, 81 Cal. 398 [22 Pac. 871], the Supreme Court pointed out clearly the distinction that exists between the use of the phrase ''burden of proof'' to signify the burden of proving or meeting a *prima facie* case, and the use of the same phrase to signify the burden of producing a ''preponderance of the evidence''. The court said: ''And it is by no means safe to infer that because a party has the burden of meeting a *prima facie* case, therefore he must have a preponderance of evidence. It may be sufficient for him to produce just enough evidence to counterbalance the evidence adduced against him.'' The court proceeded to fortify and explain this ruling with various illustrations and quotations from other cases. These quotations need not be repeated here.

The same distinction above noted was pointed out by the Supreme Court of New York and applied in the contest of a will in the case entitled *In re Connor's Will, supra*. Under circumstances similar to those in the case at bar, the court said: ''Whether the attorney has explained satisfactorily or not, there still remains the question upon all the facts and circumstances whether the respondents have sustained the burden of proof on the question of undue influence.''

There can be no doubt that these erroneous instructions to the jury, considered in the light of the evidence, were very prejudicial to appellant. It is far from certain that

under proper instructions the jury would have rendered the same verdict against her.

For the foregoing reasons, the judgment is reversed. The order overruling the motion of appellant for judgment notwithstanding the verdict is affirmed. The appeals from the other orders mentioned in the notice of appeal are dismissed.

York, J., concurred.

Houser, J., deeming himself disqualified, took no part in this decision.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 29, 1934.