[Civ. No. 15568.   First Dist., Div. Two.   Feb. 17, 1954.]

MARY HOOPER et al., Appellants, v. CHESTER
BRONSON et al., Respondents.

Thomas L. Bocci, Jr., W. L. A. Calder and Abraham Glicksberg for Appellants.

Ropers & Majeski for Respondents.

O'DONNELL, J. pro tem.*—At midday on June 26, 1950, plaintiff Mary Hooper was driving her husband's sedan on Bayshore Highway when it was struck from the rear by a truck owned by defendant John Wagner and operated by defendant Chester Bronson. This action for damages for injuries allegedly sustained by Mrs. Hooper and for damage to Mr. Hooper's car ensued. After a trial by jury a verdict for defendants was returned, upon which judgment for de-

*Assigned by Chairman of Judicial Council.

fendants was entered. Plaintiffs appeal from that judgment.

Bayshore Highway is a four-lane highway. A double white line in the center of the highway separates northbound and southbound traffic. San Bruno Avenue extends from the west line of Bayshore Highway in a westerly direction to the community of Brisbane. The avenue is only 20 feet wide, except that as it approaches its junction with Bayshore it fans out in a wide arc, so that at the junction of the two roads it has a width of approximately 100 feet. For a distance of 57 feet there is a break, or opening, in the Bayshore double white line opposite the San Bruno Avenue junction, at either end of which a large white dot is painted on the pavement.

While there is no sign or legend to such effect, the obvious purpose of the opening was to indicate the area in which a left turn from Bayshore onto San Bruno Avenue could be executed. As Mrs. Hooper put it: ". . . I felt that the opening in the road was where one should turn."

The only witnesses who testified to the circumstances of the collision were Mrs. Hooper and Highway Patrol Officer Rakestraw. Bronson, the truck driver, had died before the trial. One Garcia, a passenger in the Hooper car, did not testify.

Mrs. Hooper testified that on the occasion in question she was traveling north on Bayshore. Her destination was the lumber yard located at the northwesterly corner of Bayshore and San Bruno Avenue. About half a block south of the junction of Bayshore Highway and San Bruno Avenue she moved from the outer to the inner, or "fast," lane of traffic preparatory to making a left turn onto the avenue. She gave a hand signal indicating a stop and brought her car to a halt at the south end of the break in the double white line. She remained in this position for about "half a minute" to allow a southbound car to pass through the intersection. At about this time she observed a second southbound car approaching so she drove forward on Bayshore a distance of approximately 64 feet to a point that was about 7 feet north of the north end of the break in the double white line where she again brought her car to a stop. At the time of the second stop Mrs. Hooper was giving a hand signal for a left turn. She was in this position for another "half a minute" when her sedan was struck from the rear by the truck driven by Bronson. At no time before the collision

did she see the truck or hear the sounding of a horn or the screeching of brakes. Officer Rakestraw, who investigated the accident, testified that the truck had left 156 feet of skid marks, terminating at a point 15 feet north of the north end of the break in the double white line. At this point he also found glass and debris. He stated that, in his opinion, this was the point of impact. The only evidence introduced by defendants was a certified copy of the death certificate of Bronson. They thereupon rested.

Plaintiffs' initial contention on this appeal is that the evidence is insufficient to support the verdict for defendants. They argue that Mrs. Hooper's testimony discloses that she was acting with due care and circumspection at all times and that the collision could only have occurred as a result of Bronson's negligence. It is not necessary at this juncture to evaluate Mrs Hooper's testimony. We need only call attention to the presumption of due care which attends the deceased Bronson. (Code Civ. Proc., § 1963, subd. 4.) ▆ It is settled law that where alleged negligent acts of a decedent are in issue his representative is entitled to the presumption of due care unless evidence which is produced by the party seeking to invoke the presumption is wholly irreconcilable with the presumption. Such a presumption is sufficient to support a finding in accordance therewith. (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529]; *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; *Scott* v. *Burke,* 39 Cal.2d 388 [247 P.2d 313].) The application of this rule is well illustrated in the Smellie case. In that case Smellie was killed in a collision between the truck of defendant Ireland, in which Smellie was riding as a guest, and a train of defendant Southern Pacific Company. His heirs sued for damages for his death. The only eyewitness account of the accident was that given by Ireland. His uncontradicted testimony was to the effect that the deceased was contributorily negligent. The Supreme Court held that the deceased was entitled to the presumption of the exercise of due care, and that therefore, notwithstanding the uncontradicted testimony of Ireland, it was error to direct a verdict in favor of defendants. On page 558 of the opinion in that case the court says: "A presumption, even if disputable, will raise a conflict which is sufficient to support a finding made in accordance therewith, even though there be evidence to the contrary. Whether a presumption has been contraverted is a question of fact." And on page 559: "... a jury may

disregard the testimony of such a witness (an adverse party) as against a presumption if the latter satisfies them.''

Plaintiffs next urge that error was committed by the trial court in the giving and refusal of certain jury instructions.

At defendants' request, the trial court gave the following instruction to the jury: ''The law presumes that Chester Bronson, now deceased, the defendant John Wagner's driver in this action, in his conduct at the time of and immediately preceding the accident here in question, was exercising ordinary care and was obeying the law.

■ ''These presumptions are a form of prima facie evidence and will support findings in accordance· therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption *and any evidence that may support the presumption* to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof.'' (Italics added.) Plaintiffs contend that the inclusion in the instruction of the italicized phrase, ''and any evidence that may support the presumption,'' ·was error because there was no such supporting evidence. Assuming that there was no such supporting evidence, yet plaintiffs have not shown, nor attempted to show, wherein they were prejudiced by the inclusion of this language in the instruction. The burden of showing prejudice is on plaintiffs. (4 Cal.Jur.2d pp. 501-503.) No prejudicial error appears.

Plaintiffs further contend that the last sentence of the above quoted instruction is a misstatement of the law. They quote the following from *Odden* v. *County Foresters, F. & County Fire Prot. Dist. Ret. Board,* 108 Cal.App.2d 48, 50 [238 P.2d 23]: ''In rebuttal of a presumption it is not necessary to produce preponderant evidence to overcome it. A presumption is overcome if sufficient evidence is introduced to balance the presumption.'' To the same effect they cite *Estate of. Eakle,* 33 Cal.App.2d 379 [91 P.2d 954] and *Estate of Erickson,* 140 Cal.App. 520 [35 P.2d 628]. Plaintiffs' argument is that the instruction tells the jury that plaintiffs' evidence must preponderate over the presumption; whereas, they say, under the authorities just cited their evidence need only balance the presumption. However, in each of those cases the presumption involved was one that ran *in favor of the party carrying the burden of proof,* and

served to establish for such party a prima facie case. ■ In order to defeat the prima facie case made by such presumption the defending party need only produce evidence which balances the presumption. But where the presumption resides with the defending party, it is necessary for the party having the affirmative of the issue to overcome the presumption by a preponderance of the evidence, and an instruction to that effect is proper. (*Westberg* v. *Willde, supra,* 14 Cal.2d 360; *Olsen* v. *Standard Oil Co.,* 188 Cal. 20 [204 P. 393].)

■ Plaintiffs claim the trial court erred in refusing to give their requested instruction No. 23, which reads: "You are instructed that section 525 of the Vehicle Code of the State of California, which controls in this case, permits the making of a left turn on a highway such as the Bayshore Highway, *under the conditions as are herewith present.* I further instruct you that the plaintiff was entitled to make a left turn at any point upon the said Bayshore Highway, across any markings thereon, at any intersection entering into said Bayshore Highway." The italicized language makes the instruction fatally defective. In effect it tells the jury that plaintiff Mary Hooper was free from contributory negligence as a matter of law. It was, of course, for the jury to decide whether the condition of traffic and other surrounding circumstances were such as to permit the making of a left turn at the time and place in question.

In lieu of plaintiffs' requested instruction No. 23, the trial court, on its own motion, read to the jury subdivision (b) of section 525 of the Vehicle Code, which provides: "(b) The State Department of Public Works shall by regulation determine a distinctive roadway marking which shall indicate no driving over' such marking, and is authorized to designate any portion of a state highway where the volume of traffic renders it hazardous to drive on the left side of such marking. When such markings are in place, the driver of a vehicle shall not drive along the highway to the left thereof, but this shall not prevent turning to left across any such markings at any intersection, or private driveway." Plaintiffs claim error was committed in giving this instruction because it makes reference to turning at private driveways, as well as at intersections. Plaintiffs assert that this was confusing to the jury because no private driveways are involved in the instant case. The contention is obviously without merit.

■ Plaintiffs also complain of the following instruction, contending that it was unnecessary: "You are instructed that Section 86 of the Vehicle Code, which was in full force at the time and place of the accident herein, provided, and still provides, as follows:

" 'Intersection' is the area embraced within the prolongation of the lateral curbline, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.''

The trial court having read to the jury (and properly so) subdivision (b) of section 525 of the Vehicle Code, it was entirely appropriate that it define the term "intersection." Moreover, the instruction is favorable to plaintiffs.

An instruction was given by the court on its own motion on the doctrine of imminent peril. ■ Under that doctrine a person who, without negligence on his part, is suddenly and unexpectedly confronted with peril arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected or required to use the same judgment and prudence that is required of him in the exercise of ordinary care in calmer and more deliberate moments. (See *Leo* v. *Dunham,* 41 Cal.2d 712 [264 P.2d 1] and authorities therein cited.) Plaintiffs urge that error was committed in giving this instruction. They claim that there is no evidence that Bronson was suddenly confronted with peril. However, the evidence in the case admits of at least two interpretations which would make this instruction applicable. Examining the facts in the light of the presumption of due care which attended Bronson's actions, it must be assumed that he was driving his truck at a reasonable speed and at a safe distance behind the Hooper car and that he was observant of the movements of Mrs. Hooper and her car. When Mrs. Hooper proceeded northward past the north end of the opening in the double white line after making her first stop it might reasonably appear to one observing her movements that she had abandoned her intention to turn onto San Bruno Avenue and had decided to continue northward on Bayshore. True, she testified that she signaled a left turn. But she did not state for what distance. Moreover, the jury, being the sole judges of her credibility, might disbelieve her statement that she gave a signal. ■ Again, accepting Mrs. Hooper's testimony that she did signal, her

signal was for a left turn. But instead of turning she came to a dead stop. Thus Bronson would have been confronted with a situation where the movement of the car he was following was in contradiction of the directional signal given by its operator. Under either of these interpretations of the evidence Mrs. Hooper's action in bringing her car to a stop could not reasonably have been anticipated. Therefore, when she did stop it could reasonably be inferred that Bronson was confronted with a sudden emergency. Thus the defendants were entitled to have the prudence of Bronson's subsequent actions scrutinized in the light of the imminent peril doctrine and the instruction thereon was properly given. (See *Leo* v. *Dunham, supra*; *Emery* v. *Los Angeles Ry. Corp.*, 61 Cal.App.2d 455, 462 [143 P.2d 112] ; *De Ponce* v. *System Freight Service*, 66 Cal.App.2d 295 [152 P.2d 234] ; *Jolley* v. *Clemens*, 28 Cal.App.2d 55 [82 P.2d 51].)

The trial court instructed the jury that the verdict should be for defendants if the jury believed the collision was the result of an unavoidable accident. Plaintiffs contend that there was no evidence that the collision was the result of an unavoidable accident and that therefore the giving of the instruction was prejudicial error, citing *Hyman* v. *Market Street Ry. Co.*, 41 Cal.App.2d 647 [107 P.2d 485]. In that case the plaintiff, a passenger on a Market Street railway streetcar, was injured in a collision between that streetcar and one operated by the municipal railway. The court held that the giving of an instruction on unavoidable accident, was prejudicial error. However, as the Supreme Court pointed out in *Parker* v. *Womack*, 37 Cal.2d 116, 122 [230 P.2d 823] in discussing and distinguishing the Hyman case, ". . . the evidence (in the Hyman case) established the negligence of the defendant as a matter of law. Under the evidence there was no question of negligence for the jury to decide. Here no claim is made that Womack was negligent as a matter of law. Upon the evidence it was the duty of the jury to decide which, if either, of the drivers failed to use due care in entering the intersection and the Womacks were entitled to have the jury instructed in regard to the rule of unavoidable accident." In our case Bronson was not negligent as a matter of law. To the contrary, he carried a presumption of freedom from negligence. The instruction was therefore proper.

The trial court also gave the following instruction on its own motion: "If and when you should find that it was

within the power of a party to produce stronger and more satisfactory evidence than that which was offered on a material point, you should view with distrust any weaker and less satisfactory evidence actually offered by him or her on that point." Plaintiffs contend that this instruction prejudiced their case because of the following incident which occurred during the course of the trial: "Mr. Bocci (Plaintiffs' attorney): We will call Mr. Garcia. Mary Hooper: He is not here. He came yesterday." Plaintiffs say that because of their failure to produce the testimony of Garcia, the jury must have considered this instruction as an admonition to view the testimony of Mrs. Hooper with distrust. ■■ It is established that the testimony of one eyewitness, even though he be a party to the action, is no "weaker" than that of any other eyewitness. ■■ In such a situation there is, therefore, no occasion for giving the instruction. (*Lawyer* v. *Los Angeles Pacific Co.*, 23 Cal.App. 543 [138 P. 920]; *Gibson* v. *Kennedy Extension G. Min. Co.*, 172 Cal. 294 [156 P. 56]; *Brown* v. *Sharp-Hauser Contracting Co.*, 159 Cal. 89 [112 P. 874]; *Wilson* v. *Crown Transfer & Storage Co.*, 201 Cal. 701 [258 P. 596]; *Koon* v. *Sher*, 98 Cal.App.2d 530 [220 P.2d 784].) As it was said in the Gibson case, *supra*, (p. 305): "But this is not a case of producing weaker evidence where stronger is within the power of a party. The disqualification of parties as witnesses has been removed by our law, and the plaintiff, in testifying to the signals given, was giving evidence which was not in a legal sense 'weaker' than that of any other eye-witness. (Citing cases.) Furthermore, it was no more within the power of the plaintiff than of the defendant to produce the testimony of Bianchinotti." These cases further hold that such an instruction is not prejudicial in that situation. Thus, in the Lawyer case, *supra*, (pp. 547-548): "The fact, as claimed by respondent, that defendant knew the names and addresses of persons who were at the time passengers on the car and who were not called as witnesses, did not tend to prove that had they been called their testimony would have been other than cumulative, or that it would have been more satisfactory in support of defendant's contention, than was the evidence of witnesses produced on its behalf. Presumably, defendant offered the strongest evidence within its power to produce. . . .

"Since, however, the jury were instructed to view with distrust the evidence offered only in case it appeared to be within the power of the party offering it to produce stronger

and more satisfactory evidence than that offered, and there was no evidence tending to show such fact, it is apparent that defendant's substantial rights were not affected by the error in giving the instruction. In other words, there was no evidence tending to prove the existence of the conditions under which the jury were told to distrust the testimony." (Citing cases.) That reasoning is fully applicable here. We hold that the trial court's error in giving the instruction was not prejudicial to plaintiffs' case. (For a case involving aggravated circumstances where the giving of this instruction constituted prejudicial error, see *Boyd* v. *Theetgee,* 78 Cal. App.2d 346 [177 P.2d 637].)

▪ Plaintiffs contend that there is no evidence in the record to justify the trial court's giving the following instruction: "You are instructed that section 544 of our Vehicle Code, which was in full force at the time and place of the accident herein, provided, and still provides, as follows:

" '(a) No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein in the event any other vehicle may be affected by such movement.

" '(b) Any signal of intention to turn right or left shall be given continuously during the last 50 feet traveled by the vehicle before turning.

" '(c) No person shall stop or suddenly decrease the speed of a vehicle on a highway without first giving an appropriate signal in the manner provided in this chapter to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.' " The instruction goes to the very core of the case. The contention is without merit.

▪ The court on its own motion gave an instruction on contributory negligence. Plaintiffs say that there is no evidence of contributory negligence in the case. Mrs. Hooper's conduct and the possible inferences that may be drawn therefrom have already been discussed and need not be repeated here. Suffice it to say, additionally, that the single circumstance that Mrs. Hooper neither saw nor heard the truck until it collided with her car is sufficient to justify the inference that she was negligently inattentive. The instruction was fully warranted.

The trial court refused to give plaintiffs' instruction No. 9

relative to responsibility for failure to use ordinary care. The subject matter thereof was covered by other instructions given by the court. ■ Also refused, in the form submitted, was plaintiffs' requested instruction No. 10 which states that one who is exercising ordinary care may assume that others will do likewise. The court gave an instruction that included this statement of the law, but added the qualification that one may not so assume when it is or should be apparent to him that another is not going to perform his duty. Plaintiffs argue that there was nothing in the evidence to justify the qualification. The instruction, as given, correctly stated the law (*Angier* v. *Bruck,* 56 Cal.App.2d 55 [131 P.2d 876]) and the evidence, hereinabove recited, fully warrants it.

■ Plaintiffs submitted and the court refused the following instruction: "The plaintiffs are not required to show particularly what the specific act of negligence was which produced the injury. They are only required to show, by a preponderance of the evidence that the accident could not have ordinarily occurred had due care been employed by the defendant and you are instructed that, if the testimony in this case shows, by a preponderance of the evidence, that the plaintiffs' injuries were sustained by reason of the negligent acts of the defendant, and that those negligent acts were the proximate cause of the injury, then it will be your duty to return a verdict for the plaintiffs." This was a formula instruction which was properly refused because it fails to include the prerequisite that plaintiffs, in order to recover, be free from contributory negligence.

The trial court refused to give plaintiffs' proposed instruction No. 17 (the care required of a motorist is relative and in proportion to the danger to be anticipated), their proposed instruction No. 21 (a motorist must be vigilant and anticipate the presence of others on the highway), and their proposed instruction No. 22 (a motorist must keep his vehicle under control). The instructions as proposed correctly state the duties of the operator of a motor vehicle. However, the trial court in its instructions defined "negligence" and "ordinary care" and told the jury that, "It is the duty of every person using a public highway to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision." The three proposed instructions were merely variations on the theme of the last quoted instruction. ■ "A party is not entitled to have the jury instructed in any particular phraseology, and may not complain on the

ground that his requested instructions are refused if the court, of its own motion or otherwise, correctly announces the substance of the law applicable to the case; this is true even though the requested charges state the principles involved more clearly and definitely than those given.'' (24 Cal.Jur., pp. 806-810, quoted with approval in *McNulty* v. *Southern Pac. Co.*, 96 Cal.App.2d 841, 855 [216 P.2d 534]. See, also, to the same effect: *Gladstone* v. *Fortier*, 22 Cal.App. 2d 1, 12 [70 P.2d 255]; *Luis* v. *Cavin*, 88 Cal.App.2d 107, 115 [198 P.2d 563]; *Mullanix* v. *Basich*, 67 Cal.App.2d 675, 680 [155 P.2d 130]; *People* v. *Barber*, 62 Cal.App.2d 206, 213 [144 P.2d 371].) In any event, we fail to see where plaintiffs were prejudiced by the trial court's refusal to give the three requested instructions. Any juror of normal intelligence would appreciate, without being told, that the duty of ordinary care imports the obligation to be vigilant, to keep one's vehicle under control, and to be increasingly alert as danger increases. It is incumbent on plaintiffs to show prejudicial error. (Cases cited *supra*, this paragraph.) This they have not done.

Plaintiffs next contend that the trial court committed prejudicial error in allowing Officer Rakestraw to express his opinion as to the point of impact of the truck and sedan. The opinion was elicited on cross-examination over the objection of plaintiffs' counsel. Plaintiffs rely on *People* v. *Haeussler*, (Cal.App.) 248 P.2d 434, in support of this contention. The District Court of Appeal (Second District) held that the point of impact of two colliding cars is a question of fact for the jury's determination and that it was error for the trial court to permit a police officer to state an opinion on the subject. ■■■ However, the Supreme Court granted a hearing in that case and in its opinion expressly held that where the exact point of impact is in dispute a police officer experienced in investigating accidents may express his opinion thereon, basing such opinion on the physical facts, such as the location of skid marks, broken glass and other debris. (*People* v. *Haeussler*, 41 Cal.2d 252 [260 P.2d 8].) Apart from this, on direct examination by plaintiffs' counsel Officer Rakestraw at the very outset of his testimony stated that the collision took place 15 feet north of San Bruno Avenue. It is true that the answer was not responsive to the question put to him, but no motion was made to strike it. In any event, it would seem to be unimportant whether she stopped 7 feet or 15 feet beyond the opening. No prejudicial error appears.

■ Plaintiffs' final contention is that the trial court erred in sustaining defendants' objection to the question put to Officer Rakestraw as to whether or not he had issued any citations as a result of the accident. They cite *Dorman* v. *Taylor*, 113 Cal.App.2d 505 [248 P.2d 441]. That case, far from supporting plaintiffs' contention, holds directly to the contrary. The court, in speaking of a similar question, said (p. 509) : "The question in that form was certainly objectionable as it clearly called for the conclusion of the witness as to whether or not there were any law violations and the objection was properly sustained." Moreover, earlier in the trial defendants' counsel had sought to elicit the same information from Officer Rakestraw and the objection of plaintiffs' counsel was sustained.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.