[Civ. No. 7168.   Fourth Dist.   Mar. 13, 1964.]

NICHOLAS DOLIESLAGER, Plaintiff and Respondent, v.
EXCELSIOR FARMS, Defendant and Appellant.

Howard W. Shelton for Defendant and Appellant.

Carroll Weberg and Ernest L. Graves for Plaintiff and Respondent.

GRIFFIN, P. J.—Plaintiff-respondent brought this action against defendant-appellant for injuries resulting to him from being butted and gored by a show bull owned by defendant corporation, resulting in multiple fractures of the right forearm, intestinal goring and fractures of the pelvis.

Plaintiff's original complaint sought damages based on a cause of action on the theory of absolute liability on the ground that the bull had dangerous propensities of which defendant had knowledge. After both parties rested their case, the complaint was amended to show a second cause of action based on negligence of the defendant. A jury verdict was rendered in favor of plaintiff in the sum of $44,000. Judgment was entered on the verdict. Defendant thereafter moved for judgment in favor of defendant notwithstanding the verdict or, in the alternative, to grant a new trial. Both motions were denied.

Defendant's contentions on appeal are that: (1) there is no substantial evidence in favor of plaintiff to support the verdict and judgment; and (2) the trial court committed reversible error in refusing to give a proffered jury instruction.

Defendant corporation is a dairy farm in Riverside County, on which is maintained a number of bulls, including show bulls. Plaintiff has operated a hoof and horn trimmer business for about 17 years. He had done work for defendant for several years. He was called by an agent of defendant to come over and cut a pus pocket out of the hoof of bull No. 90, a show bull, which was going to be shown at a fair in about two weeks. When plaintiff arrived at defendant's farm, the bull was tied up near plaintiff's clipping rack by defendant. Later, the bull was placed in the rack, a cage-like affair attached to the bed of plaintiff's truck. When the bull was secured therein, the cage was tilted so the bull would lie on its side and plaintiff performed the job of cutting out the pus pocket. Thereafter, an employee of defendant asked plaintiff to put the bull back into its pen and the employee left.

Plaintiff then led the bull by a 2-foot rope back to its pen, walking along beside the bull. As he entered the pen, the bull wheeled back and butted and gored him, as indicated. He had attended this bull, then about 9 years old, on 10 or 15 occasions and since it was a yearling. He had never had any trouble with it before and he figured it was a show bull and gentle. He testified that on all other occasions one of the employees led the bull back to the show barn or pen. There was testimony that there is a "lot of difference" between show bulls and "regular bulls," particularly in the way they are handled; that show bulls are broken to be led and this is not true of other bulls; and that the customary practice is to lead show bulls but to drive other bulls.

The testimony was that about six months before the accident happened, this bull developed a characteristic or propensity, after entering his pen, of wheeling back and "fighting the gate" or butting it; that this trait was unusual, particularly as to a show bull, and many of the employees knew about this peculiar trait of this bull. Mr. Faber, an employee of defendant corporation, testified that leading a bull to the gate would create a possibility of serious injury to a person.

None of the employees of defendant corporation ever told plaintiff about this peculiar trait before the accident occurred. Mr. Faber testified that this was information that should be imparted to people who come in contact with bulls. He said, "I maybe should have told him not to lead him" and that they should have warned him about this habit of bull No. 90 to "fight the gate." Apparently plaintiff did not know of this habit. He said he would not have led this bull back to the pen had he known of it; that Faber did not tell him not to lead the bull back; and that the trait of "fighting the gate" was unusual, particularly as to a show bull. Plaintiff testified about the process of placing a bull into the clipping rack and said, "You can never trust a bull." There was no testimony that this bull ever injured any person before this accident took place or that he had ever charged, butted or gored anyone before.

The only reasonable theory upon which plaintiff could recover under this evidence is that defendant corporation was negligent in asking plaintiff to return the bull to its pen without warning plaintiff of the unusual propensity or habit of this particular animal of wheeling about and 'fighting the gate" when he was led into the pen.

The trial court gave an instruction that: "Negligence is the doing of an act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, actuated by those considerations which ordinarily regulate the conduct of human affairs. It is the failure to use ordinary care in the management of one's property or person.

"Negligence is not an absolute term, but a relative one. By this we mean that in deciding whether there was negligence in a given case, the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence." It instructed that: "Ordinary care is that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or to others." It did give, at plaintiff's request, BAJI Instruction No. 102-B, that: "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care." It also fully informed the jury on the questions of contributory negligence, proximate cause and assumption of risk.

The question of the defendant's negligence, from the evidence presented, was placed squarely before the jury, as well as the defenses of contributory negligence and assumption of risk. The jury apparently found negligence on the part of defendant and in favor of plaintiff on the other issues.

Where findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is any substantial evidence to support them. We have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom. (*Primm* v. *Primm*, 46 Cal.2d 690 [299 P.2d 231].)

It cannot be said that, as a matter of law, the evidence is insufficient to support the verdict. (*Woodall* v. *Wayne Steffner Productions, Inc.*, 201 Cal.App.2d 800 [20 Cal.Rptr. 572].) We believe the finding of the jury has evidentiary support.

Defendant claims error because the trial court re-

fused, as covered, defendant's proffered instruction, BAJI No. 102-D (rev.), reciting: "Because of the great danger involved in the handling of bulls, a person of ordinary prudence will exercise extreme caution when engaged in such an activity."

Plaintiff points out that the defendant filled in the words "handling of bulls" on the blank line in the cited instruction and argues that the injury did not occur because of the handling of bulls but from "leading" a bull; that there is a conflict in the evidence as to whether there was any hazard in leading show bulls, which do not have this unusual propensity, as distinguished from leading other bulls, and it was plaintiff's position that leading show bulls is not normally hazardous; that it was a factual question for the jury to determine whether leading show bulls involved a great danger, and the giving of the proffered instruction would tell the jury, as a matter of law, that the handling of all bulls involves a great danger and accordingly the instruction, as presented, was deficient in that it charged the jury with respect to matters of fact. (Citing *Gibson* v. *Kennedy Extension G. Min. Co.,* 172 Cal. 294 [156 P. 56]; *Schellin* v. *North Alaska Salmon Co.,* 167 Cal. 103 [138 P. 723]; *Starr* v. *Los Angeles Railway Corp.,* 187 Cal. 270 [201 P. 599].) This argument is meritorious.

It is then argued that since the trial court gave BAJI Instruction 102-B, 102-A should also have been given. Citing 1 CALJIC, 1962 pocket parts, 102-D (rev.) (note), page 56, which indicates that if instruction 102-D is given, instruction 102-A should also be given. We see no prejudicial harm in the giving of instruction 102-B without giving instruction 102-A, where other instructions given fairly cover the subject matter.

On the evidence presented, the refusal of the proffered instruction was not prejudicially erroneous.

Judgment affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.