[Civ. No. 3525.   Fourth Dist.   Mar. 3, 1947.]

RUBY BOYD et al., Respondents, v. H. B. THEETGEE et al., Defendants; WILLARD JOHNSON et al., Appellants.

Borton, Petrini, Conron & Borton and Mack, Werdel & Bianco for Appellants.

West & Vizzard for Respondents.

BARNARD, P. J.—This is an action for damages arising out of an automobile collision which occurred on a paved highway about two miles west of Wasco.

On the evening of February 6, 1944, the two plaintiffs had been at a party at a house two and one-half miles west of Wasco. There was some drinking there although the plaintiffs denied having participated therein. Some sort of a fight developed, so at about 2:30 or 3 o'clock on the morning of February 7, the plaintiffs started to return to Wasco. Andrews was driving his Ford car and Mrs. Boyd was his passenger. When they had gone about half a mile they met an oil tank truck and trailer which was proceeding west. The Ford car successfully passed the truck but collided with the left rear portion of this trailer in such a manner that the rear wheels and axle of the trailer came off, the bolts holding this assembly to the trailer frame having been sheared or broken. The rear end of the trailer dropped to the pavement and the Ford was overturned, coming to rest with its front end pointing in a northeasterly direction and with its front wheels just over on the north side of the center line of the highway. The truck proceeded on for about three-quarters of a mile where it was stopped on the north shoulder of the highway.

It was the theory of the plaintiffs that this truck and trailer had been traveling along the center of the highway straddling the white line; that as their car approached, the driver of the truck pulled over into his right lane; that because of the length of the truck and trailer the rear end of the trailer did not get back into the proper lane; and that the plaintiffs' car, traveling about two feet from the center line on its proper side, passed the truck but collided with the rear end of the trailer. The defendants' theory was that the truck and trailer were at all times traveling on the proper side of the road; that the plaintiffs' car came over on its wrong side of the road and struck the trailer just forward of its rear wheel assembly; and that this resulted in overturning the Ford and tearing the rear wheel assembly from the trailer. They further contended that Andrews was intoxicated at the time and that Mrs. Boyd had not only been drinking, but was guilty of contributory negligence in riding with such a driver.

Theetgee, the driver of the truck and trailer, was never served and did not appear at the trial. It was stipulated that he was out of the state and could not be served in this state. The jury found in favor of the plaintiffs, awarding

Andrews $1,000 and Mrs. Boyd $10,000. Judgment was entered accordingly, and the defendants, other than Theetgee, have appealed.

It is first contended that it must be held, as a matter of law, that the negligence of Andrews was the sole proximate cause of the collision. This is based on portions of the testimony given by the two respondents, and on the conditions and marks found on the scene after the accident.

While Andrews testified that when the truck was a quarter of a mile ahead it seemed to be swerving both ways and "it seemed like the truck was up in the middle of the road," he also testified that when he first observed this he himself "got over eight feet" in order to protect himself; that it seemed to him the truck then pulled over to its own side of the road; that he could not say that the truck ever crossed the center line after that; that the truck got back on its side of the road before he got close to it; and that he then started "edging over" as he approached. Mrs. Boyd testified that when they were between 25 and 50 yards away from the truck the truck was half-way over the center line, that line being in the center of the truck; that Andrews' car was traveling about two and one-half or three feet to the right of the center line; that Andrews moved over to the right; that their car was around four and one-half or five feet from the center line when they passed the front end of the truck; that Andrews then began to pull over slightly to the left; and that the collision occurred before he had moved over more than a foot or so.

Two officers testified that after the accident they found two marks on the north half of the pavement, extending from a point about six or eight feet from the overturned Ford along the highway in a westerly direction and leading to where the truck was parked, about three-quarters of a mile away. These marks were three feet eleven inches apart, and it is obvious from the testimony and from a photograph introduced in evidence that they were caused by the rear end of the trailer dragging on the pavement. These marks ran in a straight line from the point of beginning and the nearest of these lines was three feet to the north of the center line.

It is argued that the fact that these lines were straight from the point of beginning shows that the trailer was on its

right side of the center line when the collision occurred, and that since the loose wheel assembly and all marks on the pavement were to the north of the center line, the physical facts demonstrate that any testimony to the effect that the collision occurred when part of the trailer was south of the center line could not be true. These physical facts could not be held to be controlling, as a matter of law. There was a split second after the wheels were knocked from under the rear of the trailer before the trailer frame would hit the pavement. If the rear wheels of the trailer were over the center line when the collision occurred, the force of a blow that was strong enough to completely detach the rear wheel assembly of the trailer might well force the rear end of the trailer toward the north so that when it fell it would be in the position indicated by the beginning of these marks. While the respondents' testimony was somewhat conflicting and in some respects questionable, the question as presented was one of fact and it cannot be held that the evidence is not sufficient to sustain the implied finding made by the jury.

█ It is next contended that error appears in an instruction given by the court, taken in connection with statements made by one of respondents' counsel in his argument to the jury, in referring to matters which had been excluded from evidence, and which amounted to a charge that the appellants had suppressed evidence.

The driver of the truck and trailer, Theetgee, was not served and was not present at the trial. In order to meet the requirements of section 402 (c) of the Vehicle Code the respondents had asked for, and obtained, a stipulation that Theetgee was out of the state and could not be served within the state. When one of the officers was on the stand he was asked about a conversation he had had with Theetgee at the scene of the accident shortly after it occurred. An objection was made and sustained on the ground that anything Theetgee may have said was self-serving, hearsay and not binding on the appearing defendants. In the absence of the jury counsel for the respondents made an offer of proof offering to prove that at that time Theetgee had stated to this officer that he did not know that he had hit anybody, that he drove on about three-quarters of a mile without knowing he had lost his wheels, and that he then saw fire flying up at

the back of his vehicle whereupon he stopped and found that the rear wheels were gone. Thereafter, while the other officer was on the stand, he was asked to state the conversation he had had with Theetgee. An objection was made and sustained, and counsel for the respondents then said: "We will make the same offer of proof for the record as we made for the former witness." This was in the presence of the jury but the jury was not informed as to the nature of this offer of proof.

During his closing argument to the jury one of respondents' counsel stated: "We tried to give you that story," (referring to what Theetgee had told the officer that morning at the scene of the accident.) Counsel for appellants then cited this as prejudicial error, whereupon counsel for the respondents said: "I have a right to assume and the law of the courts of the State of California will support me." This was cited as prejudicial error on the ground that counsel had no right to speculate on evidence that had been excluded. The court then remarked "That is right, any evidence that is ruled out is not to be considered by the jury under any consideration." Counsel for the respondents then said: "Your Honor Please, without stating what the contents of that is, if evidence was available and it was not produced the law holds that the jury may consider as against the party that would have produced it. That is all I am making this statement for." The court then said: "All right." Counsel for the respondents then said: "They could have produced the statement." This was cited as prejudicial error but no ruling was made. Counsel for the respondents then said: "I am not, Your Honor Please, going to, by innuendo, try to get to the jury what were the contents of the statement that was ruled out, I am simply saying this, whatever it was, they could have had it here. When I offered it they chose not to have it in. They now can't say we are unfortunate we can't get the man here to testify." This was assigned as prejudicial error and the court said: "All right—proceed."

With this background the court gave the following instruction:

"You are instructed that if and when you should find that it was within the power of a party to produce stronger and more satisfactory evidence than that which was produced on a material point, you should view with distrust any weaker

and less satisfactory evidence offered by such party on that point.''

There was no evidence of any other matter or incident to which this instruction could have referred, and it could be applicable only to the reference to this excluded evidence as above summarized. It has been held prejudicial error for counsel to refer to the contents of written documents which have been excluded from evidence (*Cordi* v. *Garcia*, 39 Cal. App.2d 189 [102 P.2d 820]; *Baroni* v. *Rosenberg*, 209 Cal. 4 [284 P. 1111].) In speaking of the matters excluded from evidence and thus referred to the court, in the first of these cases, said: ''The jury may have secured the impression from the argument that they were much more favorable to the plaintiff than the facts would warrant.'' In the second of these cases, it is said: ''Although the court admonished the jury to disregard it, the harm, if any, was already done and it had no power to wipe away the false concept of the situation imprinted upon their minds. The remark was properly assigned as misconduct and, despite the admonition, was, in our opinion, prejudicial.''

No duty rested upon the appellants to produce this witness. (*Keena* v. *United Railroads*, 197 Cal. 148 [239 P. 1061].) Moreover, it had been stipulated, at the request of the respondents, that this witness was not within the state. It appears from the offer of proof that the excluded evidence was not particularly favorable to the respondents, and it certainly was not an admission of negligence on the part of the driver. That offer of proof was not heard by the jury. Later, they heard the fact referred to that an offer of proof had been made, but they had no knowledge of what statements were supposed to have been made by the driver. In his argument to the jury counsel referred to this rejected testimony several times and in a manner which would naturally give the impression that this evidence, if it had been admitted, would have been most illuminating. This was accompanied by a very strong insinuation that the appellants had suppressed this evidence, and that the respondents had attempted to get the full facts before the jury. The jury would naturally believe that the excluded evidence was much more favorable to the respondents than the facts would warrant. While the trial judge first instructed the jury that they were not to consider any evidence which had been excluded, he later said ''All

right'' when counsel stated that it was the law that if available evidence was not produced the jury might hold this against the party that might have produced it. And, still later, when counsel repeated his charge that evidence had been suppressed and when this was assigned as prejudicial error, the judge remarked ''all right—proceed.''

The respondents argue that this repeated reference to the excluded evidence was a justifiable reply to an argument made ''by innuendo'' to the effect that the appellants regretted that the driver of the truck was not available. The record does not show that any such argument was made. If it was, it could have been answered in a proper manner, and it would in no way excuse the reference to rejected evidence, and the improper charge of suppressing evidence, which followed.

This was a close case in which the evidence, while sufficient to support the verdict, was far from satisfactory. The remarks made were decidedly improper, and the effect of any admonition to disregard rejected evidence was destroyed by the court's apparent approval of what followed. Not only were the matters complained of such as to create a wrong impression on the jury, but this effect would naturally be increased, and the error emphasized and given added weight, by the above quoted instruction given by the court. We think it must be said here as was said in *Weaver* v. *Shell Co.*, 13 Cal.App.2d 643 [57 P.2d 571] : ''When all of these incidents are noted and read together it clearly appears that the rights of the defendants were greatly prejudiced and that it cannot be said they had a fair trial.''

The appellants also contend that the respondents were guilty of prejudicial misconduct in bringing out a purported offer of compromise, while one of the respondents was on the stand. This matter was handled in an unfair manner whether or not it is sufficient, in itself, to justify a reversal.

It is also contended that the damages awarded to each respondent are excessive. They were exceedingly liberal and the record indicates that they might well have been reduced by the trial judge, but the record is such that the amounts allowed could not be disturbed by an appellate court.

The judgment is reversed and the cause is remanded for a new trial.

Marks, J., and Griffin, J., concurred.