[Civ. No. 28183. Second Dist., Div. Four. Nov. 2, 1965.]

CARL G. HANSEN, Plaintiff and Appellant, v. WARCO STEEL CORPORATION, Defendant and Respondent.

Silver & McWilliams, Lawrence R. Booth and Arthur Sherman for Plaintiff and Appellant.

Kinkle, Rodiger, Graf & Dewberry and Donald Dewberry for Defendant and Respondent.

FILES, P. J.—This is a personal injury action in which the jury returned a verdict for plaintiff in the amount of $5,500. Plaintiff deems this insufficient and asks a reversal on

account of errors in admission of evidence and in instructions and because of misconduct of defendant's trial attorney.

On December 2, 1960, plaintiff was a boilermaker-welder employed by Consolidated Western Steel Division of United States Steel Corporation on a construction job in Trona, in San Bernardino County, California. The boom of a crane, furnished and operated by defendant, struck some scaffolding, causing parts of it to fall upon plaintiff. Immediately following the accident plaintiff was taken to the Trona Hospital, where his injuries were diagnosed as "multiple sprains and strains." X-rays showed no fractures. He remained there under the supervision of Dr. Semansky until December 20, when he was removed by ambulance to the Santa Fe Hospital in Los Angeles. There he was cared for under the supervision of Dr. Flamson until his release on February 3, 1961. As of the time of the trial, which began May 14, 1963, plaintiff had not worked following the accident.

Plaintiff's employer furnished the medical care and paid other workmen's compensation benefits, including temporary and permanent disability payments, at a total cost of $19,675.19. The employer has claimed a lien upon plaintiff's recovery in this action for the amount of its expenditure for compensation in accordance with Labor Code section 3856, subdivision (b).

At the trial plaintiff produced the testimony of Dr. Flamson, who had treated him, and of two other physicians who expressed expert opinions. Defendant produced two medical witnesses. All agreed that plaintiff was, and for many years prior to the accident had been, afflicted with a type of rheumatoid arthritis known as ankylosing spondylitis. It was plaintiff's contention that this condition had never bothered him prior to the accident of December 2, 1960, but that at all times after the accident, and as a result of the accident, he was physically incapable of working at his trade as a boilermaker.

Dr. Walker, testifying for the defense, was of the opinion that the sprains suffered in the accident had healed within a matter of weeks, and that plaintiff's physical condition after that was fully accounted for by the preexisting disease. He explained that spondylitis is a progressive disease which begins in youth, that defendant must have been working under a considerable handicap prior to the accident, and that following a period of inactivity he would have some difficulty in

achieving rehabilitation. With sufficient motivation and effort plaintiff should have overcome the disability in about three months, according to Dr. Walker.

Plaintiff does not contend that the verdict is unsupported by substantial evidence. He seeks a new trial because he says the first one was not fairly conducted.

■ The first claim of error is that the defense attempted to show that plaintiff drank alcoholic beverages to excess following the accident. This subject was relevant to plaintiff's physical condition and his ability to work. Dr. Flamson's report contained the notation ''I have urged him to not drink so much beer.'' When asked about this on the witness stand Dr. Flamson stated that plaintiff appeared to be nervous and jittery, and that the beer drinking might be the explanation of that condition. This testimony took on added significance when plaintiff testified that one of the reasons he was unable to work was that a boilermaker-welder must work up high and that after the accident he lacked the confidence to do that.

Defendant's counsel called plaintiff as an adverse witness and attempted to elicit admissions that following the accident his use of alcohol had affected him physically. Plaintiff repeatedly insisted that he did not understand the questions, and after several attempts at rephrasing, counsel gave up. As plaintiff's attorney later conceded, the questions ''were frankly evaded by the client.'' Defendant's efforts to connect plaintiff's unemployment with his drinking habits were not entirely successful, but we cannot say that the subject was introduced in bad faith or for an improper purpose.

■ The second point argued by plaintiff arises out of the calling of a deputy probation officer. The first time this witness was called by defendant he testified that it was his duty to investigate felony cases for the superior court, and that in the course of his duties he had investigated the plaintiff and inquired about his health, but that the record of the probation department had been destroyed. The witness was then excused temporarily until a copy of the probation report could be obtained from the criminal case file of the superior court. When the deputy was recalled he refreshed his recollection from a microfilm copy of the probation report which was shown to him on a viewer in the courtroom. He then testified that when he had made his investigation for the report dated November 15, 1953, the defendant in that case (plaintiff here) had stated that he suffered from chronic arthritis.

Plaintiff's argument here is that both the evidence and the elaborate manner in which it was produced were unnecessary and were designed chiefly to impress the jury that plaintiff was a convicted felon. While the production of the evidence could have been accomplished more simply, we cannot say that the way the subject was handled was deliberate misconduct. There is nothing in the record to indicate that defendant's attorney did not expect the witness to bring his own original records of the interview when called the first time.

Plaintiff argues that the value of the evidence obtained from the probation officer was outweighed by its prejudicial effect, and for that reason it should have been excluded, citing McCormick on Evidence, page 319. As a basis for his argument plaintiff points out that he had admitted having arthritis as far back as 1950. Plaintiff here misses the point of the controversy. The issue was not whether he had arthritis before the accident, but how it had affected him.

In his opening statement plaintiff's attorney told the jury that prior to the accident the spondylitis "had not given him any problem." Plaintiff testified that in 1950 he had slipped and wrenched his back and had gone to a chiropractor, who told him he had arthritis, but that from 1950 to the date of the accident at Trona he had had no complaints or symptoms or discomfort, and that he never gave any more thought or consideration to it. Plaintiff also told Dr. Yamshon, one of his expert witnesses, that before the accident he never had any difficulty with his back that he could remember.

The fact that plaintiff would tell his probation officer in 1953 that he "suffered from chronic arthritis" might reasonably be regarded as casting serious doubt on plaintiff's testimony that for 10 years he was free of discomfort and thought nothing about his condition. The jury might also consider that Dr. Yamshon's opinion was based in part upon inaccurate information of the patient's history. The testimony of the probation officer disclosed a very significant admission on plaintiff's part, and thus it was not an abuse of discretion to receive the testimony even though it also necessarily revealed to the jury some unfavorable information which was itself irrelevant.

Plaintiff also complains of a series of questions asked of him on cross-examination as to how he spent his time after his release from the hospital and whether he had sought employment outside his trade or whether he was able to perform other work. Plaintiff argues that the questions were insult-

ing and embarrassing to him. We do not think they should be so characterized. The subject of interrogation was plaintiff's physical condition, the extent of his recovery, and his ability to earn a living.

This line of questions carries further significance when considered with the testimony of plaintiff's witness, Dr. Yamshon, a specialist in physical medicine and rehabilitation. Dr. Yamshon testified that when he saw plaintiff in March 1962 he "recommended that he be referred to the Bureau of Vocational Rehabilitation for retraining in a new type of occupation." Plaintiff's testimony was that he had not sought either retraining or employment, except that in December 1962 he had asked his union dispatcher for a boilermaker's job which would not require climbing. Defendant had a legitimate objective in trying to show, if it could, that plaintiff was not incapable of earning a living.

In instructing the jury the court erred in giving BAJI No. 30 as requested by defendant. The text is as follows: "Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which lies within the power of one side to produce and of another to contradict.

"Hence, if and when you should find that it was within the power of a party to produce stronger and more satisfactory evidence than that which was offered on a material point, you should view with distrust any weaker and less satisfactory evidence actually offered by him on that point."

There was nothing in the record of this trial to which that instruction could apply. Defendant, in its brief, argues: "The failure of plaintiff to call Dr. Semansky and the refusal to stipulate that the acts, conditions or events recorded by Dr. Semansky could be introduced in evidence amply justified the giving of BAJI No. 30." No authority is cited in support of that statement.

This so-called "failure" and "refusal" on the part of plaintiff provide no basis for that instruction.

The only record made by Dr. Semansky which was refused admission into evidence was a letter which he wrote to plaintiff's employer expressing some opinions about plaintiff's disability. This letter was offered by defendant, objected to by plaintiff and excluded by the court. Defendant was allowed to introduce the records of the Trona Hospital which showed the diagnosis of Dr. Semansky and the details of the treatment which was prescribed and given under his super-

vision. The only information lacking was Dr. Semansky's opinion, which was expressed in his letter to the employer, and which the doctor could have expressed if called as a witness by either side.

As the editors of BAJI point out, the statute on which instruction 30 is based (Code Civ. Proc., § 2061, subds. 6, 7) relates only to the credibility of the evidence which actually has been produced.[1] None of the evidence which plaintiff produced was any less credible by reason of the fact that Dr. Semansky was not called or that his letter was not in evidence. Each of plaintiff's medical witnesses based his opinion upon his own knowledge of plaintiff's condition and his own knowledge of medical science. The opinions of plaintiff's medical witnesses were not necessarily any weaker or less satisfactory than the opinion of Dr. Semansky, and the absence of Dr. Semansky's opinion afforded no reason for distrusting the evidence which plaintiff produced. (*Wood* v. *Los Angeles Traction Co.,* 1 Cal.App. 474, 477 [82 P. 547].)

Furthermore, when the statute and the jury instruction refer to "stronger and more satisfactory evidence" they mean evidence which is admissible. A hearsay document, which the court has excluded from evidence, surely is not "stronger and more satisfactory evidence" within the meaning of the statute. (*Boyd* v. *Theetgee,* 78 Cal.App.2d 346, 349 [177 P.2d 637].)

The giving of this instruction as an abstract statement of law, and unconnected with any evidence in the case, could mean little to the jury and by itself was harmless. (*Hooper* v. *Bronson,* 123 Cal.App.2d 243, 251 [266 P.2d 590].) Plaintiff contends, however, that prejudice appears in the manner in which defendant's attorney discussed the Semansky report in his closing argument to the jury.

Defendant's attorney pointed out to the jury that he had caused Dr. Semansky's reports to be brought in from Trona, but that these reports had been "objected to by the opposition, and kept out" and he commented that a person claiming damages ought to have all of the reports of his first doctor in evidence, but that this plaintiff insisted on not having them. The attorney said, "Now, there is also an instruction which is commonly given in these cases, that if evidence which is available for your consideration is not

[1]California Jury Instructions, Civil (4th rev. ed. 1956) 1964 pocket part, page 33.

made available for your consideration, there is some inference that can be taken from that.''

First of all it should be noted that prior to argument the court had told counsel what instructions would be given. No instruction was given about any inference to be drawn regarding evidence which is available and not produced. If defendant's attorney had in mind BAJI No. 30, he was mistaken. As is pointed out above, this instruction merely tells the jury it may ''view with distrust any weaker and less satisfactory evidence,'' of which there was none.

Counsel was guilty of serious misconduct in arguing the importance of the excluded document and in asking the jury to draw an inference because plaintiff's attorney had made an objection which the court had sustained. This kind of misconduct, under some circumstances, is ground for reversal of a judgment. (*Boyd* v. *Theetgee*, 78 Cal.App.2d 346 [177 P.2d 637]; *Cordi* v. *Garcia*, 39 Cal.App.2d 189, 197 [102 P.2d 820].)

In the present case throughout the closing argument plaintiff did not object or request that the jury be admonished or move for a mistrial. ■ The law applicable to this situation has been recently stated in *Horn* v. *Atchison T. & S. F. Ry. Co.*, 61 Cal.2d 602, 610 [39 Cal.Rptr. 721, 394 P.2d 561]: ''Generally a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. [Citations.] ■ The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeating improprieties, thus avoiding the necessity of a retrial. ■ 'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' (*Tingley* v. *Times-Mirror*, 151 Cal. 1, 23 [89 P. 1097].) ■ In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice.''

■ In the present case the objectionable argument was based upon a misstatement and a misapplication of the law. The trial court might have nullified its effect by a prompt and clear statement from the bench. The fact that plaintiff

neither asked that the jury be admonished nor demanded a mistrial should be taken to indicate that counsel did not at the time regard the argument as prejudicial. Since plaintiff elected not to demand remedial action before the case went to the jury, he may not demand a retrial on that ground after hearing the disappointing verdict.

We can appreciate the distress of plaintiff's attorney over the way this case was tried. The record contains an astonishing amount of unnecessary conversation. But we are not persuaded that the case was decided on irrelevant considerations. The argument of plaintiff's attorney and the instructions of the court pointed out to the jurors the issues to be decided and the matters which they were entitled to consider. The verdict appears to reflect the view that before the accident plaintiff worked under some difficulty with a very stiff and possibly painful back; that the injury sustained in the accident was slight and its effect temporary; and that after plaintiff had collected substantial compensation from his employer he did not make the effort to go back to his dangerous and difficult occupation. From our review of the record we believe that the jury arrived at their appraisal of plaintiff's case not because of the antics of defense counsel but on the basis of substantial evidence.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a rehearing was denied December 2, 1965, and the following opinion was then rendered:

FILES, P. J.—In a petition for rehearing plaintiff's attorney says that the reason he did not object to the defendant's closing argument is that, a moment earlier, the trial judge had admonished him against interrupting. This is a misreading of the record. To set the matter straight it is necessary to point out the distinction between proper and improper interruptions during argument.

 While defense counsel was arguing to the jury his interpretation of the hospital chart, which was in evidence, plaintiff's attorney said: "Excuse me. I would like counsel to indicate where in that particular chart it is so indicated." This statement had no purpose or effect other than to challenge the argument which was being made by the attorney who then had the floor. It was heckling, pure and simple.

The court quite properly spoke up to tell plaintiff's attorney that his comment was out of order.

On the other hand it is proper, and at times necessary, to interrupt an opponent's argument to cite counsel for misconduct and to request the court, by reason of that misconduct, to admonish counsel, admonish the jury, or declare a mistrial. Nothing which the trial court said in this case could be construed as preventing plaintiff's attorney from arising for those purposes had he believed at the time that the circumstances called for it.

Jefferson, J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 12, 1966.