Filed 12/23/24  Sarkany v. West CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JENNIFER SARKANY et al.,<br><br>     Plaintiffs and Respondents,<br>v.<br>TIMOTHY WEST,<br><br>     Defendant and Appellant. | A170253<br><br>(San Francisco County<br>Super. Ct. No. CGC-18-571355) |

This is the fourth appeal to come before us from a highly contentious landlord-tenant dispute.  The litigation began in November 2018, when four residential tenants sued their landlord, Christie West, and her son Timothy West, whose name was on the deed of the rented premises during plaintiffs' nine-month tenancy.[1]  (*Sarkany v. West* (Aug. 30, 2022, A160573) [nonpub. opn.] (*Sarkany I*).)  After a jury trial, judgment was entered for plaintiffs against both defendants.  The trial court then granted Timothy's motion for a new trial.  Plaintiffs challenged the new trial order on appeal, and we affirmed.  (*Ibid.*)

The present appeal arises from Timothy's new trial.  The only issue before the jury was whether Timothy was plaintiffs' landlord.  (The parties

---

[1] Christie West is not a party to this appeal. To avoid confusion between two individuals with the same last name, we refer to them by their first names.

1

agreed before the second trial that the issue of damages would not be retried.)
The jury found that Timothy was plaintiffs' landlord, and the trial court
entered judgment for plaintiffs against Timothy and reinstated the damages
awarded against Timothy from the first trial.  The trial court denied
Timothy's combined motion for new trial, remittitur, terminating sanctions,
and judgment notwithstanding the verdict (JNOV).

Timothy now appeals from the order denying his combined motion,
raising three arguments: the trial court erred by denying the motion for
JNOV because there was no admissible evidence to support the jury's finding
that he was a "landlord" as that term is defined in the San Francisco Rent
Stabilization and Arbitration Ordinance (Rent Ordinance); the trial court
erred by reinstating the damages that were awarded in the first trial;  and
the trial court erred by not imposing terminating sanctions based on repeated
misconduct by plaintiffs' counsel.  We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Underlying Case*

We draw our summary of the underlying case and first trial from our
opinion in *Sarkany I.*

Plaintiffs Jennifer Sarkany, Ramsey Abouremeleh, Sandra Fierro, and
Nina Robin alleged that they signed one-year lease agreements with Christie
to rent part of a single-family house in San Francisco (the property) starting
February 1, 2018.  Christie managed the property and lived there as well.
(*Sarkany I, supra.*)

Plaintiffs alleged that Christie negligently operated the premises, that
Christie was Timothy's agent, and that Timothy negligently allowed her to
rent and manage the property.  (*Sarkany I, supra.*)  They alleged they were
forced to pay utility bills for the entire property, including the space that

2

Christie occupied; that Christie harassed and intimidated them to force them to vacate the premises before the leases ended; that she took steps to jeopardize their careers; that she entered their space without notice or cause; that because of her actions they lived in a state of constant fear and worry; that they vacated the premises at the end of October 2018 because of her interference; and that Timothy and Christie acted in bad faith by withholding their security deposits. (*Ibid.*)

Plaintiffs alleged multiple causes of action, which were tried to a jury over several weeks in December 2019 and January 2020. (*Sarkany I*, *supra*.) The only cause of action relevant to this appeal alleged violations of section 37.10B of the Rent Ordinance (section 37.10B), entitled "Tenant Harassment." The jury found each defendant liable to each plaintiff for multiple violations of section 37.10B; each defendant acted in bad faith and in knowing violation or reckless disregard of the Rent Ordinance; and each defendant violated section 37.10B with malice, oppression, or fraud. (*Sarkany I*, *supra*.) The jury awarded each plaintiff compensatory damages from each defendant. The jury then awarded each plaintiff punitive damages from each defendant for the violations of section 37.10B. (*Ibid.*)

After judgment was entered in *Sarkany I*, Timothy moved for a new trial on the ground that the so-called "*Cochrane* complaint," a document that had been identified by plaintiffs as a potential trial exhibit and that had been excluded from evidence as more prejudicial than probative, had nevertheless been included in the jury's exhibit binders and considered by the jury during their deliberation.[2] (*Sarkany I*, *supra*.) Throughout the trial, the court had

_____

[2] The *Cochrane* complaint alleged claims against Timothy that were similar to those in plaintiffs' case; these claims had been settled and dismissed without any findings or admission of liability. (*Sarkany I*, *supra*.)

3

ordered counsel to meet and confer to verify the accuracy of the compilation of admitted exhibits that would be presented to the jury, but when the error came to light there was "finger-pointing between counsel: defendants asserted plaintiffs were responsible for the error, and plaintiffs denied the accusation." (*Ibid.*) Ultimately, the trial court determined that the jury's consideration of the *Cochrane* complaint was the result of court error, and that the error was so prejudicial to Timothy that it required a new trial. (*Ibid.*) We affirmed the new trial order in *Sarkany I.*

B.     *Timothy's New Trial: Pretrial Proceedings*

By the time of Timothy's new trial, the only cause of action that remained against him was violation of section 37.10B, "Tenant Harassment," and the sole issue for the jury was whether during plaintiffs' tenancy Timothy was a "landlord" as that term is defined in section 37.2(h) of the Rent Ordinance, which provides that a landlord is "an owner, lessor, sublessor, who receives or is entitled to receive rent for the use and occupancy of any residential rental unit or portion thereof in the City and County of San Francisco, and the agent, representative or successor of any of the foregoing."

Although the parties stipulated that Timothy was "on title during [p]laintiffs' tenancy," Timothy disputed that he was an owner of the property during that time. Therefore, the jury was required to determine whether Timothy was an owner of the property and whether he received or was entitled to receive rent for the property.[3]

_____

[3] Much of the evidence that was presented at Timothy's new trial pertained to whether Timothy was an owner of the property. The jury's finding that he was an owner is not contested in this appeal.

4

1.    *Timothy's Motion on Relitigation of Damages*

Timothy filed a motion in limine concerning the relitigation of damages in which he argued that although the jury had found him liable for punitive damages in the first trial, punitive damages were improper as a matter of law because they had not been awarded based on his direct liability but instead were based on the jury's determination that he was vicariously liable as principal for Christie's conduct as his agent.  After hearing extensive argument from the parties, the trial court gave Timothy a choice as to how to proceed if the jury found he was plaintiffs' landlord:  either the damages awarded by the prior jury, including punitive damages, would be reinstated, or the issue of damages would be tried to the new jury.  Timothy's attorney suggested that the parties agree on a stipulated damages award, arguing that the damage awards from the first trial should not stand because they were based on the jury's consideration of the prejudicial *Cochrane* complaint. The trial court responded, "I understand that point.  I would hope that plaintiffs would recognize that.  It is a significant factor.  But I have to leave that to the two of you [i.e., the parties' attorneys] and to your professionalism in that regard."  Timothy's attorney stated that he did not want a trial on damages and suggested the court could "let me try to work it out with" plaintiffs' attorney.  The court repeated, "I have to leave that to the two of you," and asked plaintiffs' counsel if he had further legal argument on the issue.  He responded that he did not.

The court then stated, "So to be clear, if the jury is to find [Timothy] is a landlord, the Court will impose the damages found by the first jury but will, of course, defer if counsel is able to—"  Timothy's attorney interrupted:  "Your honor, if you're going to do that, then [plaintiffs' attorney] is not going to agree with any number that I have."  The court suggested the parties confer

5

privately; they did so, and reported back to the court that they believed they would be able to reach an agreement. The trial court responded, "Great," and then moved on to other issues. As will be seen, the issue of damages was not tried to the new jury.

 2. *Plaintiffs' Motion to Admit Deposition Testimony*

Plaintiffs filed a pre-trial motion to permit them to use certain deposition testimony at trial, including a video excerpt from Timothy's deposition where he expressed his belief that he was entitled to receive rent from the property.[4] Plaintiffs sought to introduce the video in evidence for any purpose, and not just for impeachment.

The trial court heard extensive argument on the matter. Timothy argued (as he had objected at the deposition) that counsel's question to Timothy about entitlement to rent called for a legal conclusion, and also argued that entitlement was the ultimate issue in the case and invaded the purview of the jury. He argued that there were other, unobjectionable questions that could be asked by counsel at trial to ascertain who was entitled to collect the rent, such as, "[D]o you believe you were owed rent from the property in 2018?" or "[D]id you get any rent in 2018?" or "Did you think that [Christie] was supposed to give you rent in 2018?"

---

[4] The exchange at the deposition proceeded as follows:
 "[Plaintiffs' counsel]: Right, but who do you believe is entitled to the rents from the property personally?
 "[Defendant's counsel]: I'll just object. Calls for legal conclusion.
 "[Plaintiffs' counsel]: Go ahead.
 "[Timothy]: Repeat that question. [¶] . . .
 "[Plaintiffs' counsel]: Who do you believe is presently entitled to the rents from the properties?
 "[Timothy]: I am, however, she needs it to maintain the mortgages and the properties themselves."

6

Ultimately, the court instructed plaintiffs that they could ask these other questions, which did not go to the ultimate issue, and that the challenged deposition excerpt could be used only for impeachment if Timothy's testimony "opens the door."

C.   *Trial*

Over the course of a day and a half, the jury heard testimony from three witnesses:  Timothy, Christie, and Steven Cone, an attorney who was retained by Christie in 2018.

Under questioning from plaintiffs' counsel, Timothy testified that in 2012 his mother deeded the property to him and his brother Thomas, and in May 2018 Thomas deeded his interest in the property to Timothy.  The recorded deeds were admitted into evidence.  Timothy testified that his arrangement with his mother was that he would be "on title" and she would manage the property, including making sure the property was up to code, renting it out, and collecting rents.  Asked by plaintiffs' counsel whether he believed the rents generated from the property belonged to him and his brother, he responded, "I believe I said they were mine, but I was under the assumption that I was on title and that, based upon the fact that I was on title, that these—these things were subsequently, you know, adjucated [*sic*]— I don't know the word—toward me.  But I never received rents personally.  I never kept tabs on the rent.  I never knew exactly how much the rent even was.  I just knew that they were coming in to keep the property flowing."

Later, Timothy's own attorney asked Timothy the following question: "Bottom line, Timothy, in 2018 did you ever think that you were owed rent from the property?"  Timothy responded, "No.  I wasn't aware of any actual numbers involving—involved with the rents.  I didn't have any knowledge of

7

the rents or the—or how much the mortgage was, how—what needed to be done. If something was asked of me, then that's where I stepped up."

After Timothy's attorney completed his initial questioning, and outside the presence of the jury, plaintiffs' attorney stated, "there was that one video clip section in [Timothy's] testimony about entitlement to rents. I believe we would be okay—we—we should be allowed to play that now that he said all that." The court responded, "Yes." Timothy's counsel made no objection. The court took a short recess.

When plaintiffs' counsel questioned Timothy after the recess, he asked, "Now, you testified that you didn't believe you were entitled to the rents. Right?" Timothy responded, "Correct." At that point, plaintiffs' counsel began to play the video deposition excerpt that the court had authorized only for purposes of impeachment. As the video began, Timothy's counsel objected, saying, "This is [Evidence Code section] 352, MIL," and asked for a sidebar. The court overruled the objection and declined the request for a sidebar. The video was then played for the jury.

Christie was the next witness. She testified that she purchased the property in 1983, started renting it out in about 1985 or 1986, and signed a gift deed to her sons in 2012 "for estate planning." She was asked about a declaration in which she had stated that her sons each received a 40 percent share of rent from the property and she receives a 20 percent share. She testified she had no recollection of the declaration, and that it was "impossible" that she would give 80 percent of the rent to her sons. She testified that when she gave her sons money in 2018, it was not because they were owed rent money. Video excerpts from Christie's depositions were played to the jury.

8

Later, outside the presence of the jury, Timothy's counsel objected that plaintiffs' counsel had improperly asked about Timothy's entitlement to rent to open the door to using the video excerpt of Timothy's deposition testimony, and then improperly played the video. He asked for terminating sanctions, specifically, judgment in favor of Timothy. Plaintiffs' counsel argued that Timothy's counsel opened the door to the entitlement issue by questioning Timothy "repeatedly" about the rents and asking "who do they believe is entitled to rents." The court ordered the parties to review the transcripts and then meet and confer as to any appropriate limiting instruction or remedy.

On the next court day, having read and considered transcripts and briefs from the parties, and after hearing further argument, the court instructed the jury that "for legal reasons" it was striking the video clips from Timothy's deposition, and therefore the jury was not to consider them for any purpose. The jurors had heard two video clips from Timothy's deposition; both were stricken. With the court's permission, plaintiffs' counsel then read for the jury the testimony from the one video clip from Timothy's deposition for which there was no objection.

The final witness, Steven Cone, was then called to testify. He testified that Christie hired him as an attorney in April 2018 in connection with a proposed "owner move-in" eviction by which she would move into the upstairs of the property and evict some of the tenants who were living there. He testified that he was aware of the 2012 gift deed in which Christie transferred the property to her sons, Timothy and Tom, and that Christie had retained him "to find some way to get the boys off title or get her on title." Cone understood that at some point in 2018, Tom had transferred his interest in the property to Timothy. Cone prepared a deed for Timothy to sign

transferring the property to Christie, which Timothy signed in October 2018. At Christie's instruction, the deed was never recorded.

Later that day, the jury heard closing arguments and began deliberations, and that afternoon they returned their verdict, answering "yes" to the one question posed to them: "Was defendant Timothy West a landlord of plaintiffs?"

Judgment was then entered in favor of plaintiffs based on the jury's verdict. In the written judgment, the trial court awarded damages against Timothy, recounting its earlier ruling that if Timothy was found to be plaintiffs' landlord the damages awarded in the first trial would be reinstated and Timothy's decision not to retry damages. The court elaborated on the circumstances of this earlier ruling about damages stating, "Defendant was clear that he did not agree with the Court's ruling but nonetheless stated he did not want to reopen/retry the damages. Defense Counsel and Plaintiffs' counsel advised the Court they would resolve the damages issues if the jury found in favor of Plaintiffs, particularly in light of the impact of the Cochrane complaint inadvertently going into the deliberating room with the first jury in January 2020. This judgment sets forth the damages awarded . . . in the first trial, which both counsel indicated they would resolve after the retrial."

The judgment restated the findings of the first jury, that Timothy violated section 37.10B numerous times as to each plaintiff, that he acted in bad faith and in reckless or knowing disregard of the Rent Ordinance as to each plaintiff, and that he violated section 37.10B with malice, oppression, or fraud. Damages amounted to $151,450, representing a total of $42,150 in non-economic damages as awarded by the first jury, tripled under the Rent Ordinance because the first jury made a finding of knowing or reckless disregard, plus $25,000 in punitive damages as awarded by the first jury.

10

The court stated in a footnote to the judgment that it "accepts both counsels' representation that the damages issues will be resolved."

D.     *Timothy's Posttrial Motion*

The damages issues were not resolved.  Timothy filed a "Motion for New Trial and Renewed Motion for Terminating Sanctions Against Plaintiffs; Request for Remittitur; . . . and Motion for Judgment Notwithstanding the Verdict."  He argued that the judgment should be reversed and JNOV entered in his favor because there was no evidence that he "collected or was 'entitled' to collect rent" (italics omitted); that terminating sanctions should be imposed because plaintiffs' counsel, who had been sanctioned several times before in the case, had improperly played the video excerpt of him being asked about entitlement to rent; and that he should be granted a new trial or remittitur on the issue of damages.  Absent a new trial, he argued that the non-economic damages against him should be reduced and in any event should not be trebled and that the punitive damages should be stricken.

After a hearing, the trial court issued an order denying the motion, ruling as follows:  "As for the renewed motion for Terminating Sanctions, requested in light of Plaintiff's [*sic*] counsel playing a video clip from Mr. West's deposition that had not been specifically authorized by the Court, the Court sustained Defendant's objection, ordered the parties to propose a curative instruction and the Court issued a curative instruction.  Jurors are presumed to follow the Court's instructions.  (*Phillips v. Honeywell International Inc.* (2017) 9 Cal.App.5th 1061, 1081.)  Given the Court's specific instruction to the jury not to consider the video clip, especially in light of the other evidence introduced at trial, Defense has not set forth a sufficient showing of prejudice, based on this conduct by Plaintiffs' counsel,

11

for either terminating sanctions nor for a new trial.  [¶] As for the Motion for New Trial/Remittitur and the Motion for [JNOV], given the evidence at trial, Defense has not set forth a sufficient basis to grant either motion and thus the motions are denied."

This appeal followed.

## DISCUSSION

A.    *JNOV*

Timothy asserts that the trial court abused its discretion by denying his motion for JNOV.  He claims that there was no evidence to support the jury's finding that he was plaintiffs' landlord, because there was no admissible evidence of his entitlement to rent.  According to Timothy, the only "evidence" of his entitlement to rent was the excluded deposition testimony, and because the verdict was based on excluded evidence it should be reversed.

1.    *Applicable Law and Standard of Review*

"A trial court must render [JNOV] whenever a motion for a directed verdict for the aggrieved party should have been granted.  [Citation.]  A motion for [JNOV] may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.  [¶] As in the trial court, the standard of review is whether any substantial evidence—contradicted or uncontradicted—supports the jury's conclusion." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.)  The question before us is this: "Does the record, viewed in the light most favorable to the jury's verdict, contain evidence that is reasonable, credible and of solid value sufficient to support the jury's verdict?" (*Licudine v. Cedars-Sinai Medical Center* (2016)

12

3 Cal.App.5th 881, 890.) "If we must resolve any legal issues in answering this question, our review of such issues is de novo." (*Ibid.*)

2.    *Analysis*

Substantial evidence supports the jury's finding that Timothy received or was entitled to receive rent from the property occupied by the plaintiffs. This evidence includes an excerpt from a July 3, 2019 declaration in which Christie states, "Accordingly, I will never file Exhibit 'D' [the unrecorded deed from October 2018 in which Timothy transferred the property back to Christie] because it is not my intent to ever take back ownership of the Property from my son Timothy West. I do collect rent from the Property, but it is dispersed [*sic*] between me and my sons. They receive an approximate 40% share each and I receive a 20% share. That is my only financial interest in the Property." Timothy suggests that this is not substantial evidence, asserting simply that the declaration is "confusing." He also asserts that Christie "disclaimed" the declaration at trial. Christie's disclaimer at trial of her declaration amounts to a contradiction, but that does not mean the declaration was not substantial evidence. It was up to the jury, not this court, to decide whether to believe the declaration or the disclaimer. (See *In re Caden C.* (2021) 11 Cal.5th 614, 640 ["a reviewing court should not 'reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts' "].)

There is additional substantial evidence to support the jury's finding in testimony from Christie's deposition that was read to the jury. Christie was asked why she called her sons for money when she was the person who received "the rental monies." She responded, "I didn't spend the money for myself. This money did not belong to me." She was then asked, "Which money?" and responded, "It belongs to my sons. The rental monies."

13

There is still more evidence on the point in the excerpt from Timothy's deposition that was read to the jury without objection. Timothy stated that it was Christie's job, as manager of properties for which Timothy was on the title, to pay the mortgages on the properties. Timothy testified that the funds to pay the mortgages came "[f]rom our rent." Asked, "who is the 'our' you're referring to?" Timothy responded, "My brother and I." Timothy's testimony that the rent received from the property was partly his is substantial evidence to support the jury's finding.

Timothy argues that even if Christie disbursed rent proceeds to him, that does not show that he is "entitled" to the rent. He contends that because his name did not appear on the tenants' leases and because the tenants did not know who he was when they signed the leases, as a matter of law he is not entitled to receive rent from the property. The argument is not supported by any pertinent authority and is unpersuasive.

B.    *Damages*

Timothy argues that the trial court erred in two respects when it awarded plaintiffs the damages that had been awarded by the jury in the first trial. He argues that the trial court abused its discretion by failing to reduce the compensatory damages award, which the trial court had recognized was likely influenced by the jury's improper consideration of the *Cochrane* complaint in the first trial. He also argues that as a matter of law no punitive damages should have been awarded against him.

Timothy cites no authority to support his conclusory claim that the trial court abused its discretion when it refused to reduce the compensatory damages award against him. For this reason, we need not even address the point. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["[w]hen

14

legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

In any event, we see no abuse of discretion in the circumstances here. Timothy had the opportunity to retry the issue of damages in his new trial and decided not to do so, knowing that if he was found to be plaintiffs' landlord and if he and plaintiffs could not agree on a stipulated damages award, the court would award plaintiffs the damages that had been awarded in the first trial. There is no more that needs to be said.

On the subject of punitive damages, Timothy contends that the operative complaint "only alleged Timothy . . . was vicariously liable for the actions of Christie," and that punitive damages are not permitted for "pure vicarious liability" under *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128 (*Weeks*). Timothy asserts that in *Weeks* an award of punitive damages against an employer was "reversed, because there was no showing the employer itself engaged in oppression, fraud, or malice, and their liability was purely vicarious." As it happens, in *Weeks* the Court of Appeal *affirmed* an award of punitive damages against the employer. (*Id.* at p. 1137.) Leaving aside Timothy's misunderstanding of *Weeks*, his argument is meritless.

To begin, Timothy does not accurately describe the content of the operative complaint. The complaint alleges, "It is *believed* that [Timothy] did not take any direct actions as to the [p]laintiffs other than to allow [Christie] to continue to operate the rentals at the property." (Italics added.) The complaint also alleges that Timothy was "on notice of [Christie's] actions"; that Christie acted with Timothy's "express or ostensible authorization"; and that Timothy "authorized, ratified, acknowledged, consented, acquiesced,

15

and/or approved of all [Christie's] acts, conduct, and/or omissions . . . after being aware of [those] actions."

More important, Timothy disregards the jury's findings in the first trial that with respect to each of the plaintiffs Timothy violated section 37.10B with malice, oppression or fraud. In light of these findings, *Weeks* is of no help to Timothy. In *Weeks*, the Court of Appeal held that under Civil Code section 3294, subdivision (b), which concerns the circumstances in which an employer can be liable for punitive damages based on the actions of an employee, punitive damages can be imposed against an employer for hiring or controlling an offending employee, ratifying an offense committed by an employee, or "acting with oppression, fraud or malice." (*Weeks*, *supra*, 63 Cal.App.4th at p. 1155.) Although the case before us does not involve an employer and employee, *Weeks* supports the award of punitive damages against Timothy, because the first jury found that he acted with oppression, fraud or malice (a finding not affected by the new trial, which addressed only the issue whether Timothy was a landlord).

C.     *Terminating Sanctions*

Timothy argues that the trial court abused its discretion by refusing to impose terminating sanctions, which he urges were warranted because of plaintiffs' counsel's repeated willful misconduct.

1.     *Applicable Law and Standard of Review*

"California trial courts have inherent power to issue a terminating sanction when a plaintiff's misconduct is deliberate, is egregious, and makes lesser sanctions inadequate to ensure a fair trial." (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 740 (*Stephen Slesinger*).) We review a trial court's decision whether to issue a terminating sanction for abuse of discretion. (*Id.* at p. 765.)

16

2. *Analysis*

Timothy's argument that terminating sanctions should have been imposed relies not only on plaintiffs' counsel playing the excluded video deposition excerpt at trial, but also on the assertion that plaintiffs' counsel was sanctioned four times even before the second trial began and the fact that the *Cochrane* exhibit was shown to the jury in the first trial. Timothy refers to prior sanctions imposed on plaintiffs' counsel, but does not discuss them in any detail or contend that the conduct that led to the sanctions had any effect on the second trial.[5] As for the *Cochrane* complaint, the trial court did not find that its presentation to the first jury was the result of willful misconduct by plaintiffs' counsel; the trial court determined that the jury's consideration of the exhibit was the result of court error. (*Sarkany I, supra.*)

The experienced trial judge here was well aware of the history of the litigation: the judge presided over Timothy's first trial as well as the second, and had ordered the new trial because of the first jury's consideration of the *Cochrane* complaint. The court declined to impose terminating sanctions to address the improper playing of the video from Timothy's deposition, but did impose a sanction by instructing the jury not to consider the video for any

---

[5] That said, we are aware that sanctions were imposed on plaintiffs' counsel before the first trial "for misuse of the discovery process; for opposing a motion for protective order where the court found that 'on the virtual eve of trial' plaintiffs propounded 'voluminous, cumulative, and overly burdensome' discovery requests as well as untimely requests for admission; and for what the court found to be intimidation of a witness by plaintiffs' counsel at a deposition, in violation of Penal Code section 136.1." (*Sarkany v. West* (Aug. 30, 2022, A161728) [nonpub. opn.].) And the record shows that before the second trial, the court granted with sanctions Timothy's request for protective order based on discovery requests propounded by plaintiffs for the new trial. The court found that "[v]ery few requests are even remotely relevant and there is no substantial justification for this voluminous discovery."

purpose. "[J]uries are presumed to follow a trial court's limiting instructions" (*Phillips v. Honeywell International, Inc., supra,* 9 Cal.App.5th at p. 1081), and Timothy points to nothing that suggests the presumption does not apply in this case. In particular, Timothy does not show that the trial court's instruction was inadequate to ensure that he received a fair trial. (*Stephen Slesinger*, *supra*, 155 Cal.App.4th at p. 740.) Although Timothy asserts that the excluded video deposition clip was the only evidence to support a finding that he received or was entitled to receive rents from the property, we have concluded otherwise, as discussed above.

Timothy suggests that he rebutted the presumption that the jury followed the court's instruction by citing two cases he describes as "cases where a limiting instruction was insufficient." But neither of these cases has any applicability here.

In *Boyd v. Theetgee* (1947) 78 Cal.App.2d 346, plaintiffs' attorney improperly referred to excluded evidence in closing argument. (*Id.* at p. 350.) The trial court's admonition to the jury to disregard the statement was undercut by the trial court's subsequent remarks, which seemed to approve of the attorney's attempt to justify the conduct. (*Id.* at pp. 350-352.) Not only did this "create a wrong impression on the jury," but in addition, the trial court gave an instruction that had the effect of emphasizing the error. (*Id.* at p. 352.) Nothing remotely similar happened in this case: the trial court judge gave a clear instruction to the jury to disregard certain testimony and said nothing to undercut the instruction or emphasize the excluded testimony; the jury clearly understood the instruction; and the trial court judge said nothing to undercut the instruction or emphasize the excluded testimony.

18

The other case cited by Timothy, *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, does not help him, either. In *Doppes* the Court of Appeal "ma[d]e the extraordinary, yet justified, determination that the trial court abused its discretion by failing to impose terminating sanctions against defendant for misuse of the discovery process." (*Id.* at p. 971.) Terminating sanctions were "imperative" in *Doppes* because discovery abuses came to light during the trial—abuses that were " 'willful, preceded by a history of abuse, and the evidence show[ed] that less severe sanctions would not produce compliance with the discovery rules.' " (*Id.* at p. 995.) Terminating sanctions were required in *Doppes* only because in the middle of trial, it was learned that the defendant, whose history of discovery abuse was described at length, had still not complied with discovery orders and that the abuse was worse than originally known. (*Id.* at pp. 971, 983-986.) The abuse that came to light during the trial was of a piece with the previous documented discovery abuse. Here, there is nothing to suggest that plaintiffs' counsel's prior discovery abuses had any effect on Timothy's new trial, and the conduct at the new trial that precipitated the motion for terminating sanctions was apparently unrelated to the conduct that led to prior discovery sanctions.

In short, Timothy fails to show that the trial court abused its discretion when it declined to impose terminating sanctions.

## DISPOSITION

The challenged order is affirmed. Respondents shall recover their costs on appeal.

19

_____

Miller, J.

WE CONCUR:


_____

Stewart, P.J.


_____

Desautels, J,


A170253, *Sarkany et al. v. West*

20